EMPIRE LIFE INSURANCE CO. *v.* MASON, adm'x, *et al.*

1. The demurrer was without merit, and was properly overruled.
2. If an administratrix assigned at private sale a policy of insurance on the life of her intestate, this was illegal; and the ordinary of the county had no authority, either in term time or vacation, to pass an ex parte order approving such transfer, and thereby to render it valid.
3. If a decedent left a policy of insurance on his life, and his administratrix obtained an order from the ordinary to allow her to "compromise"

such policy as a disputed and doubtful claim (under the Civil Code, §§ 4004-4006), it would not be necessary to institute a proceeding to set aside such order, so as to attack a private transfer which had previously been fraudulently obtained from the administratrix by the agent of the insurance company in his own name and for his own benefit.

(*a*) Such an order was not an adjudication of a court of competent jurisdiction as to the validity of the private transfer which the agent of the company had previously procured by fraud to be made to him individually by the administratrix.

4. Where the company recognized and did not question the validity of the policy, which was payable in installments, and, before making payments to its agent as transferee thereof, or an assignee under him, knew of the necessity of a valid transfer from the administratrix of the deceased; and where it had knowledge of the private transfer by such administratrix to the agent of the company as an individual and of the ex parte order purporting to permit or confirm a compromise of a disputed and doubtful claim of the estate, when there was in fact neither dispute nor doubt on the part of the company, this was sufficient to put it upon inquiry and to affect it with notice as to the title claimed by its agent individually, or one to whom he assigned the policy; and if nevertheless the company continued to pay to such assignee of its agent the installments due on such policy, it did so at its peril.

(*a*) Moreover, direct notice of the fraud perpetrated by its agent on the administratrix was given to the company when only a few installments had been paid.

5. The fact that the administratrix put the claim in the hands of an attorney to prosecute, and that, upon suggestion by the attorneys of the company that he might enjoin further payments, he replied that he did not see how he could prevent payment of the installments by the company, and that he later retired from representing the administratrix, without having brought any suit, whereupon she promptly employed other counsel and proceedings were properly begun, can not be declared, as matter of law, to have estopped her from proceeding to set aside the transfer obtained from her by fraud and recovering from the company the amount due on the policy.

(*a*) An attorney who had a claim placed in his hands for the purpose of proceeding to set aside a transfer of an insurance policy obtained by fraud of a third party, and to recover from the company the amount due on the policy, which was payable in installments, and who had brought no action, had no implied power to agree that a certain installment might be paid by the company to the person who procured the transfer by fraud, in order not to embarrass him.

6. Under the evidence contained in the record, there was nothing in the contention that the plaintiff entered into a scheme to defraud the company.

7. The verdict against the company was right and proper, under the evidence; and none of the grounds of the motion for a new trial, made by it, present any sufficient reason for a reversal.

JUNE 14, 1913.

Equitable petition. Before Judge Ellis. Fulton superior court. July 6, 1912.

Abbie L. Mason, as administratrix of the estate of A. J. Mason, filed her petition against the Empire Life Insurance Company, S. E. Jones, and Z. Whitehurst, alleging in substance as follows: On September 6, 1905, the company issued to Mason an annuity policy for $3,000, payable in sums of $150 every three months for five years. In 1907 it issued to him another policy. All premiums were paid on both policies, and they were in force at the time of his death on August 19, 1907, and were in his possession. Jones, the soliciting agent for the company, who solicited and wrote both of the policies, knew of their existence and maturity. A few days after the death of Mason, Jones called for the alleged purpose of preparing proofs of death to be sent to the company. He took the policy first mentioned, saying that he desired to get certain dates from it, and then said it was void for non-payment of premium. He manifested great friendship for the family, and obtained one Linder to be appointed as temporary administrator. The first installment due on the policy thus held by Jones was paid to Linder, and was delivered by him to Jones. The plaintiff qualified as administratrix in October, 1907. Jones, realizing that she would discover that the policy was being paid, stated to her that he could get a thousand dollars out of it for her without cost, and procured from her a transfer of it. Subsequently he informed her that it was impossible to obtain that amount, represented that it was doubtful if anything could be collected on the policy, and urged her to accept $500 in cash, which she agreed to do, relying on his representation. On December 12, 1907, Jones, without her knowledge, transferred the policy to Whitehurst, who collected installments falling due after that date. On January 4, 1908, Jones again repeated his statement in regard to the invalidity of the policy and its doubtful collectibility, and procured her to sign a petition to the ordinary, which he had caused to be prepared, and which he represented was necessary in order to enable him to effect a settlement with the company. She did not know of the validity of the policy or that payments were being made under it. The petition to the ordinary recited the doubtful and contested character of the claim, and prayed for authority to compromise and to "carry into effect, with official approval, the terms of said compromise already agreed

upon with the said Jones." The ordinary thereupon in term time passed an order authorizing the administratrix to compromise the claim "and to carry into effect the negotiations of settlement and assignment heretofore made by her with said Jones, subject to the order and approval of the court." It was further ordered that "when said settlement is finally made, that the said administratrix make official report to this court of her actings and doings." On March 24, 1908, she received by mail a voucher from the company for $150, being an installment due on the policy, and also a rider to be attached to the policy. She thus learned that instead of the policy being void and uncollectible as Jones had represented, the company was paying it in accordance with its terms. Jones endeavored to get her to return the check which had been sent to her. She employed an attorney, who notified the company of the fraud which had been perpetrated upon her, and that further payment should not be made to Jones or Whitehurst. Subsequently the attorney, who had been employed by her to take action, retired from representing her, and she at once obtained other counsel, and filed this petition for the purpose of canceling the transfers of the policy and recovering the amount of the policy less the sum which was paid to her for the transfer. She prayed for a judgment against the company for the installments which it had already paid out and for the amount still unpaid, and a judgment against Jones and Whitehurst for the amounts received by them, with interest, after crediting the amount received by her for the policy. She also prayed for cancellation.

The company admitted the issuance of the policy. It stated that it could neither admit nor deny the allegations in regard to the transactions between the plaintiff and Jones, for want of sufficient information, but it denied any notice or knowledge of fraud perpetrated on her. It admitted making the payments on the policy, but stated that they were made by reason of false representations on the part of Jones. It alleged that the payments were made with ample authority from the plaintiff, and that the company was protected both by the transfer and power of attorney signed by the administratrix, and also by the order of the ordinary. It alleged, that, since the filing of the petition, it had received a letter from Jones, stating that the policy now involved had been replaced by another policy, but that Jones induced the company to issue the

second policy as additional insurance upon the life of the deceased, and retained the policy now in controversy, inducing the defendant to believe that it was in full force. It also alleged that the plaintiff had participated in an effort to defraud the company, and, after notice of the fraud perpetrated on her by Jones, if any, had permitted the defendant to make payments without interruption, and was thus estopped. It alleged that by reason of the fraudulent conduct of Jones it had been induced to pay out $1,950; and it prayed that judgment be rendered in its favor against Jones and Whitehurst for that amount with interest.

Whitehurst claimed to have taken the transfer from Jones as a security for an indebtedness of the latter, that he acted in good faith, and that he was protected both by the transfer and by the order of the court of ordinary. No answer of Jones appears in the record.

The jury found in favor of the plaintiff against the company, Jones, and Whitehurst for $1,800 (the amount paid by the company and received by the two latter defendants) with interest, less $500 (the amount paid by Jones to the plaintiff for the transfer of the policy) with interest. They also found in favor of the plaintiff against the company for the balance of the policy remaining unpaid, in accordance with the terms thereof. They further found in favor of the company against Jones and Whitehurst for $1,950, with interest, being the total amount of installments which had been paid out by the company. The company moved for a new trial, which was refused, and it excepted. It also assigned error on the overruling of a demurrer filed by it. Whitehurst made a separate motion for a new trial, and excepted to the overruling thereof. The other facts necessary to an understanding of the decision are stated in the opinion.

*F. A. Hooper* and *H. H. Turner,* for plaintiff in error.

*Twiggs & Gazan,* and *Dorsey, Brewster, Howell & Heyman,* contra.

LUMPKIN, J. It appears from Jones's own statement that he undertook to defraud the insurance company, whose agent he was, by issuing and reporting a policy as new business, which he subsequently said was really issued as a substitute for the one involved in this case, thus getting the commission on issuing a new policy; and further that, after the death of the insured, he obtained a transfer

of this policy at a cheap rate and, through himself or his assignee, sought to collect the full amount. This he unblushingly set forth in a letter to the company. He filed no answer to the charge of fraud. According to the evidence, he undoubtedly swindled a confiding negro woman, whom he induced to believe that the policy was not valid and would be contested, and obtained from her, as the administratrix of the insured, a transfer to him, under the guise of being a compromise, paying her about one sixth of the value of the policy. But "the best laid schemes o' mice and men gang aft agely," and Jones's double-dealing was discovered by the accident of the company's sending an installment (the policy was payable in installments) directly to the administratrix instead of to its agent. The plaintiff instituted an equitable action to cancel the transfers and to recover from the company the amount of the policy, less what she had received, and from the agent and his assignee the amounts which they had received, after deducting what had been paid to her for the policy, which they declined to accept in rescission. The verdict for the plaintiff against the company was the just and proper result, under the evidence, and no good reason is shown for setting it aside. The assignee filed a separate motion for a new trial; and it will be dealt with separately.

1. There was a demurrer, but it was without merit, and was rightly overruled.

2-4. It was contended that the company relied on the transfer of the policy by the plaintiff to Jones, and an order later obtained from the ordinary, and that there was nothing to put the company on notice of any fraud. It admitted in its answer that until after this suit was brought it considered the policy good, and that it received a copy of the order of the ordinary. An administrator must have authority in order to sell the property of the estate. Civil Code, § 4039. There is no law which empowers an ordinary to grant an ex parte order ratifying a previous illegal transfer of an insurance policy on the life of the deceased, under a private sale, by an administratrix, and thus to validate it. The order of the ordinary did not purport on its face to authorize a sale, but rather a compromise of a doubtful or disputed claim, under the Civil Code, §§ 4004-4006. While it used the words "compromise and assign" and referred to approving "the settlement so made," there was nothing to "compromise" between Jones as an individual and the

administratrix. He obtained from her by fraudulent representa-
tions a transfer to him, naming him also as her attorney in fact,
on October 12, 1907. In January thereafter he procured, with her
assent and in her name, an order to allow a "compromise" and
approve a "settlement," and thus sought to make valid the illegal
transfer, under the guise of a compromise. The transaction carried
on its face notice of its illegality. The company must have known
that if there was anything about the policy to compromise, it was
between the company and the policyholder, and that it was no
"compromise" for its agent to buy the policy for himself at a small
amount and collect it in full. Its letters in the record show that it
appreciated the fact that the administratrix had no power to make
a private sale, and that there must be a valid transfer, duly au-
thorized; and it knew what sort of authority there was.

It was contended that the judgment of the ordinary was binding.
If the order should be treated as an attempt to ratify and make
valid the previous illegal transfer, as above stated, there is no such
power in the ordinary or his court. The fact that the court of
ordinary is one of general jurisdiction as to certain matters gives
no power to pass any such order. If the order should be treated as
authority for the administratrix to compromise a doubtful and con-
tested claim against the company, this has never been done. An
authority to compromise does not have to be revoked or set aside in
order to attack a previous private transfer procured by fraud.

5. It was argued that the plaintiff put the matter in the hands
of an attorney, who, in response to a suggestion of the company's
attorneys that he might enjoin the company from making further
payments, wrote a letter stating that he did not see any way to
enjoin the company from so doing. No action was pending. Such
an opinion was not an agreement within the scope of the general
powers of an attorney to make, so as to bind his client. The attor-
ney had no implied power to consent to give away his client's prop-
erty by agreeing that one installment might be paid to the person
who had obtained the transfer by fraud, in order not to embarrass
him. The company had been put on notice of Jones's fraudulent
procedure. The somewhat despondent view taken by the attorney
first employed by the plaintiff did not operate as an estoppel on his
client, or at least can not be declared to have done so as matter
of law. When she was advised of his opinion and unwillingness to

proceed, she promptly employed other counsel, who took a more hopeful view and one more in accord with the law. When the company had notice of the facts, it acted at its peril. If there was doubt, it could have filed a petition in the nature of a bill of interpleader. Merely suggesting an injunction would not relieve it.

6. It was claimed that the plaintiff entered into a scheme with the agent of the company to defraud the latter. But it does not appear from the evidence how the company was to be defrauded. The application for the policies (the second showing on its face that the other policy was of force and not superseded), the receipts for payments of premiums on this one, the deduction by the company from the first payment made after the death of the insured of an unpaid premium, and its entire conduct show conclusively that the policy·was valid and in force. What fraud did the plaintiff undertake to perpetrate upon it except to get money to which she was entitled? Jones's language, like his conduct, was not free from indirection. But no fraud' or attempted fraud by the plaintiff was shown.

7. It is needless to take up separately the grounds of the motion for a new trial filed by the company. Some of the charges, especially as to collaterally attacking a judgment for fraud, may not have been correct, but none of them show any reason for a reversal, under the evidence. *Judgment affirmed. All the Justices concur.*