### WHITEHURST *v.* MASON, administratrix, *et al.*

1. Under the statute law of this State an administrator can not sell the personal property of his intestate (annual crops excepted) without first obtaining leave to sell from the ordinary, and the sale must be public after due advertisement. A sale without an order of the ordinary is void, and passes no title to the purchaser or his vendee. *Nutting* v. *Thomason,* 46 *Ga.* 34, distinguished.

2. An administratrix sued to recover the amount of a policy of life insurance payable in installments to her intestate's administrators or executors. It was alleged that she had been induced by fraud to assign the policy; that her immediate assignee had transferred it to another, both transfers having been made without obtaining leave to sell the policy, and the sale or transfer in each instance having been privately made; and, that certain installments due on the policy had been paid by the insurance company to the second assignee. The insurance company and both assignees were parties to the suit. On the trial it did not appear that the second assignee had knowledge of the fraud practiced by the

first assignee on the administratrix, but did have notice that the transfer was made without order of court. *Held*, that the second assignee did not acquire a legal title to the policy, on the ground that it was not legally assigned; but that, in the absence of any proof of the insurance company's insolvency or other equitable reason, the •administratrix could not recover against the second assignee the amount of the installments paid to him by the insurance company.

3. Money paid through mistake of law, with full knowledge of all the facts, can not be recovered back, unless it is made to appear that the person to whom it was paid can not in good conscience retain it.

(*a*) An insurance company issued a policy of insurance payable in installments. This policy was assigned to a person as a result of a fraud practiced upon the assignor, who was the administratrix of the insured, the assignment being made without authority of the court of ordinary or public sale. The assignee of the administratrix bought property from a third person (who had no knowledge of the fraud), and gave therefor his purchase-money notes of the same amounts and at the same maturities of the installments of the policy, and assigned the policy as collateral security for the notes. The insurance company, with full knowledge of all the facts, paid several installments due on the policy to the second assignee, who applied the same in discharge of the purchase-money notes. Under these circumstances the insurance company could not recover back the installments paid to the second assignee.

4. Other points raised are decided on the writ of error sued out by the insurance company.

JUNE 14, 1913.

Equitable petition. Before Judge Ellis. Fulton superior court. July 6, 1912.

*Anderson, Felder, Rountree & Wilson,* for plaintiff in error.

*Twiggs & Gazan, Dorsey, Brewster, Howell & Heyman,* and *F. A. Hooper,* contra.

EVANS, P. J. This case is a .prong of *Empire Life Insurance Company* v. *Mason,* administratrix, ante, 141 (78 S. E. 935). The administratrix of Mason sued the insurance company to recover an amount alleged to be due on a policy of insurance issued by the company on the life of her intestate, and joined in the suit, as parties' defendant, one Jones, the .agent of the company, who was alleged to have fraudulently procured an assignment of the policy from her, and Z. Whitehurst, the assignee of Jones. The jury found in favor of the plaintiff, and the insurance company and Whitehurst made separate motions for new trial; which being overruled, they sued out writs of error. We are now considering that of Whitehurst.

1. The evidence authorized a finding that Jones practiced a fraud on the administratrix of Mason in procuring an assignment

of the policy to him, but there was no evidence that Whitehurst participated in the fraud. The policy was payable to the administrators or .executors of A. J. Mason in quarterly installments, and was assigned by the administratrix of Mason to Jones, who assigned it to Whitehurst as collateral security for a debt. At that time no judgment had been granted by the court of ordinary authorizing a compromise with the company, ratifying the transfer to Jones. This statement is made in order to be historically accurate, and not to intimate that such order was valid. Under these facts, did the transfer of the policy by Jones to Whitehurst vest the valid legal title thereto in Whitehurst? In the various rulings to which exception is taken the trial judge held that if the assignment to Jones was invalid and did not serve to vest title to the policy in him, his transfer to Whitehurst was likewise invalid. An administrator has no right, under the statutes of this State, to sell the property of his intestate (except annual crops) without an order from the court of ordinary granting him leave to sell. At common law an administrator could sell personal property either at private or public sale; but, as was said by Simmons, C. J., in *Poullain* v. *Brown,* 82 *Ga.* 412, 423 (9 S. E. 1131): "Our statute has changed the common law, and requires the executor or administrator to apply to the ordinary for leave to sell (which application in the case of personal property shall be made at least ten days before the order is granted), and that advertisement be made of the day and time of sale. The intention of the law of this State seems to be that all sales of the property of decedents shall be public, after full notice to all parties interested therein." It is contended, however, that a sale made without an order of the court of ordinary is only voidable, and that an innocent vendee from a purchaser at an administrator's sale made without an order takes a good title to the property. This point was before the court in *Patterson* v. *Lemon,* 50 *Ga.* 232, where it was said: "We recognize the well-settled rule, that, in order to divest the heirs at law of their title by an administrator's sale, the administrator must have authority to sell. This is a sine qua non. Without it the sale is void: 4 Wheaton's Reports, 77; *Clements* v. *Henderson,* 4 *Georgia,* 148. Under our law, this authority is the judgment and order of the ordinary having jurisdiction of the administration, duly had and rendered: *McDade* v. *Burch,* 7 *Georgia,* 559. It is also true, that, to make a perfect

sale to divest the title regularly, the administrator must comply in full with the provisions of the law as to the mode of sale: *Worthy* v. *Johnson,* 8 *Georgia,* 236; 10 Ibid. 358. But whilst a sale without authority is void, a sale without a strict compliance with the requirements of the law is only voidable. Even an innocent purchaser gets nothing under a void sale; but if the sale be voidable only, innocent purchasers, those having no notice, either actual or constructive, of the irregularity, are protected." The holding in this case has been codified as follows: "To divest the title of the heir at law, the administrator must have authority to sell; if there be irregularities, or if he fail to comply with the law as to the mode of sale, the sale is voidable, except as to innocent purchasers." Civil Code, § 4039. This section protects innocent purchasers against nothing except irregularities in carrying out a valid order of the court of ordinary granting leave to sell (*Horne* v. *Rodgers,* 113 *Ga.* 231, 38 S.. E. 768), and is applicable to choses in action. *Thompson* v. *Thompson,* 77 *Ga.* 692 (3 S. E. 261).

Strong reliance is placed by the plaintiff in error on the case of *Nutting* v. *Thomason,* 46 *Ga.* 34, as deciding that no order of the ordinary is required for the sale by an administrator of stock of an incorporated railway company, and that a sale without such order is only voidable, and that a bona fide purchaser from the administrator's vendee, without notice that the sale was made at private sale and without order, gets a good title. Let us concede that, at the time of the transaction inquired of in that case, the law did not require an administrator to obtain leave to sell stock before making a sale of it; certainly under the code, as construed in many decisions of this court made since then, an order of the court of ordinary granting leave to sell the personal and real property of his intestate by an administrator is essential to the validity of the sale. Moreover, in that case there had been successive transfers of the stock on the books of the company, new certificates issued, and the last purchaser was not put on notice that the stock he was buying was that which was sold by the administrator. In the instant case, Whitehurst had notice from the transfer of the insurance policy by Mason's administratrix to Jones, accompanying the policy, that the administratrix of Mason was without authority to transfer the policy to Jones. So that whether we hold the original transfer to be absolutely void or only voidable, Jones's as-

signment to Whitehurst was invalid as against the administratrix, and she was entitled under the evidence to have it canceled as preliminary to her recovery against the insurer on the policy. In view of this conclusion, the various rulings of the court in this regard were not prejudicial to the plaintiff in error.

2. The plaintiff prayed for judgment against Whitehurst for the installments collected by him; and a verdict was returned against him, Jones, and the insurance company for such amounts. The petition sought to recover the amount of the policy which had been assigned by the administratrix to Jones and by him to Whitehurst, less the amount received from Jones. Inasmuch as Whitehurst was the assignee of Jones, to whom the policy was assigned by the plaintiff, it was necessary that these assignments be vacated before the plaintiff established her right to sue. He was properly made a party, but neither the pleadings nor evidence authorized a recovery by the plaintiff against him for the amount of the installments paid by the company to him.

3. The insurance company pleaded that if the plaintiff recovered a verdict against it, it should have judgment over against Whitehurst for the amount of the installments which it had paid to him. The jury found in favor of the insurance company on this contention. The plaintiff in error insists that these payments were voluntary, with knowledge of all the facts, and, so far as he is concerned, there was no misplaced confidence, and no artifice, deception, or fraudulent practice, and such payments can not be recovered back. It appeared that after Jones procured the transfer of the policy from the administratrix, he proposed to buy from Whitehurst certain real estate. A trade was effected, Whitehurst taking Jones's notes in amounts and at such maturities as to be paid off by the quarterly installments under the policy, and took a transfer of the policy as collateral security. About three months after this transaction the plaintiff discovered that Jones had perpetrated a fraud on her, and promptly employed counsel, who notified the insurance company of the fraud of its agent, Jones, in procuring an assignment of the policy to himself. Notwithstanding this notice, the insurance company continued to pay Whitehurst the installments as they fell due, which were applied to the discharge of Jones's notes. Jones has since sold the real estate. Whitehurst has a solvent indorser on the unpaid notes of Jones.

Our code declares: "Payments of taxes or other claims, made through ignorance of the law, or where the facts are all known, and there is no misplaced confidence and no artifice, deception, or fraudulent practice used by the other party, are deemed voluntary, and can not be recovered back, unless made under an urgent and immediate necessity therefor, or to release person or property from detention, or to prevent an immediate seizure of person or property." Civil Code, § 4317. In England and in some other jurisdictions no distinction is made between money paid in ignorance of law and under mistake of law. Lord Ellenborough went so far as to hold that money paid under mistake of law with full knowledge of the facts can not be recovered although it is against conscience for the defendant to retain it; his lordship basing his conclusion on the ground that "every one must be taken to be cognizant of the law; otherwise there is no saying to what extent the excuse of ignorance might not be carried." Bilbie v. Lumley, 2 East, 469. This question underwent elaborate analysis in *Culbreath v. Culbreath,* 7 *Ga.* 64 (50 Am. D. 375), and Nisbet, J., declined to follow the rule announced in Bilbie v. Lumley. In the *Culbreath* case a decedent died leaving neither wife or children, and his nearest of kin were seven surviving brothers and sisters and the children of a deceased sister. The administrator, in a family settlement and under a misapprehension of the law, divided the estate equally between the seven surviving brothers and sisters, to the exclusion of the children of a deceased sister. Subsequently these children recovered a judgment against the administrator for their share of the estate, and the administrator sued two of the distributees to recover the amount overpaid on account of this mistake. The court differentiated payments made in ignorance of law from those made under mistake of law, and held that "money paid by mistake of law may be recovered back in an action for money had and received, where there is full knowledge of all the facts; provided that the mistake is clearly proven, and the defendant can not in good conscience retain it." Our code recognizes this distinction to some extent in the sections which declare that "Mere ignorance of the law on the part of the party himself, where the facts are all known and there is no misplaced confidence, and no artifice or deception or fraudulent practice is used by the other party, either to induce the mistake of law or to prevent its correction, will not

authorize the intervention of equity." "An honest mistake of the law as to the effect of an instrument on the part of both contracting parties, when such mistake operates as a gross injustice to one, and gives an unconscientious advantage to the other, may be relieved in equity." And that "Mistake of law, if not brought about by the other party, is no ground for annulling a contract of sale. Mistake of a material fact may, in some cases, justify a rescission of the contract; mere ignorance of a fact will not." Civil Code, §§ 4575, 4576, 4115. Judge Nisbet took pains to hedge in and qualify the rule allowing a recovery of money paid under mistake of law, by requiring, as indispensable to its recovery, that the plaintiff show that the defendant can not in good conscience retain the money. The rationale of the rule allowing a recovery of money paid with knowledge of the facts and under a mistake of law is that the plaintiff is not attempting to throw a loss upon any one. If the plaintiff's recovery would lead to a loss on the part of the defendant, then, the parties being equally innocent, that fact of itself is sufficient reason for denying the right of recovery on the plaintiff's part. Keener on Quasi Contracts, 91.

In the instant case Whitehurst sold property to Jones and took the policy as security. The installments collected on the policy by Whitehurst were applied to the payment of Jones's note. Whitehurst did not participate in the fraud which Jones practiced on the administratrix of the insured, in order to procure her to transfer the policy to Jones. He failed to get a title to the policy by virtue of the transfer to him, because the law does not authorize an administrator to sell choses in action without first obtaining leave to sell from the ordinary, and then only at public putcry. When reduced to its ultimate facts the case stands thus: Jones fraudulently procured a transfer of the policy of insurance to himself; which transfer was attempted to be made without an order of the ordinary and at private sale. Without notice of the actual fraud, but with notice that the transfer was attempted to be accomplished by a sale without order of court and privately made, Whitehurst in the course of business sold property to Jones and received part payment in the installments paid by the company, which paid the installments with knowledge of all the facts. Under such circumstances Whitehurst paid value received to Jones for the money received from the insurance company as payment on the policy, and he could retain the payments in good conscience. In effect the

transaction is the same as if the insurance company paid the money to Jones and Jones paid it to Whitehurst. Whitehurst has changed his status in reliance on the validity of the assignment of Jones to him, and it would be inequitable to allow the insurance company to recover the installments voluntarily paid by it with knowledge of all the facts.

The verdict rendered was special in form. It allowed a recovery by the administratrix against the insurance company, Jones, and Whitehurst, for the installments which had been paid, less the amount received from Jones, a recovery by her against the insurance company for the unpaid installments, and a recovery by the insurance company against Whitehurst for the installments paid to him by the insurance company. As will be seen in the opinion in the case of *Empire Life Insurance Co.* v. *Mason,* ante, the verdict against the insurance company in favor of the administratrix should stand. But so much of the verdict as gives a recovery in favor of the administratrix against Whitehurst, and in favor of the insurance company against Whitehurst, is erroneous. A new trial is not necessary, and direction is given to eliminate the recoveries against Whitehurst.

4. Some of the instructions complained of contained abstract principles of law not strictly appropriate to the case; but these instructions were not of such a character as to be prejudicial to the plaintiffs in error. Other points made in the record are ruled in the companion case of *Empire Life Insurance Co.* v. *Mason,* and reference is made to that case.

*Judgment reversed, with direction. All the Justices concur.*