### 11613.  FLOYD v. TAYLOR COTTON COMPANY.

LUKE, J.   1. A contract in writing cannot be changed into a conditional
  obligation by parol, in the absence of fraud, accident, or mistake.   See
  *Haley* v. *Evans*, 60 *Ga.* 157 (2).   In this case the defendant undertook
  to show a contemporaneous parol agreement rendering the written con-
  tract conditional.   He pleaded also fraud in the procurement of the con·
  tract, but this plea was not supported by the evidence.
2. The court did not err in admitting evidence as complained of.   The con-
  tract sued upon was valid and enforceable.   The evidence upon the con-
  trolling issues was without dispute, and the verdict, which was directed
  by the court, was demanded by the evidence.

<em>Judgment affirmed.   Broyles, C. J., and Bloodworth, J., concur.</em>

DECIDED DECEMBER 17, 1920.

Action on contract; from DeKalb superior court — Judge
Hutcheson.   December 3, 1919.

Breach of two contracts by refusal to deliver cotton to the pur-
chaser, the Taylor Cotton Company, was alleged in the petition,
and the company sought to recover from the seller, J. M. Floyd,
the alleged difference between the market price of the cotton at
the time specified for delivery and the contract price.   The de-
fendant pleaded that the alleged contracts were void and unen-
forceable, that no actual delivery of cotton was contemplated and
that they were gaming contracts.   He pleaded also that they
were obtained by fraud of the plaintiff's agent in representing
that the price of cotton would go down and he (the defendant)
would make money by selling; that he was uninformed and inex-
perienced in such matters, and that this was known to the plain-
tiff's agent, who was experienced in the business of buying and
selling cotton.   As to the second contract these defenses were
abandoned on the trial.   The verdict, as directed by the court,
was against the defendant, as to both contracts.   The exceptions
are to the directing of the verdict and to certain rulings as to
admissibility of evidence.

The first contract was in writing and was dated August 7, 1916.
It stated that it was between "Taylor Cotton Company, cotton
buyers, of Macon, Ga., and J. M. Floyd, of Redan, Ga., " and
was signed in duplicate .by J. M. Floyd and also as follows:
" Taylor Cotton Company, per pro J. W. Marshall. "   The con-
tract was as follows:   " That the Taylor Cotton Company has
bought from said J. M. Floyd and said J. M. Floyd has sold to

Taylor Cotton Company 50,000 pounds of lint cotton upon a basis of Atlanta 4's, to be packed in 100 merchantable bales, and to be delivered between the 1st and 20th days of October, 1916, at Redan, Ga., f. o. b. cars, at and for the price of 13-3/8 cents per pound of Atlanta 4's. Other grades not below middling may be delivered at the market differences in value on the day of delivery. Said cotton to be paid for when delivered, one dollar ($1.00) upon the purchase price of said cotton having been paid to said J. M. Floyd by said Taylor Cotton Company upon the execution and receipt of this contract, the receipt hereof being hereby acknowledged. "

From the evidence it appeared that during the year 1916 the Taylor Cotton Company had, in Atlanta, Ga., a branch office under the management of J. W. Marshall, and its business was the buying and selling of cotton for both immediate and future delivery. It had contracts for the sale of cotton, to be delivered at various places in the United States and in Europe. It sold to mills in Georgia and South Carolina, and to eastern mills. The contract of the defendant, dated August 7, 1916, was made with Marshall, and the cash consideration of one dollar was paid to the defendant, and in September the second contract for the sale and future delivery of cotton by the defendant to the plaintiff was made with Marshall. The price was higher in the second contract, and 78 of the 100 bales contracted for in that contract were delivered by the defendant. An extension of time under the first contract was requested by the defendant before the time for delivery, but was refused, and in a letter dated October 17, 1916, he was informed of this refusal and was requested to deliver the cotton, the letter stating that the cotton was needed, and the writer hoped that the defendant would be able to ship it when due, or to make a cash settlement. An agent of the plaintiff went, on October 20, 1916, to Redan, where the defendant lived and the cotton was to be delivered, the agent's purpose being to receive the cotton and pay for it, but the defendant was in Atlanta, and the cotton was never delivered.

The defendant testified, that he was engaged in general merchandising and bought cotton, and had been in the cotton business for nine or ten years; that J. W. Marshall had worked with a certain firm engaged in the cotton business with which he (the

defendant) had been trading and with which a Mr. Baker, referred to as "old man Baker," was connected; that when he (the defendant) sold cotton to Baker, Baker would always "take care of" him if the market went against him; this was their arrangement, and Marshall knew of this arrangement. As to the sale in question in this case he testified: "Mr. Marshall worked for the Taylor Cotton Company and he came up there and wanted me to sell him 100 bales of cotton; he said he would treat me as the old man did, and take care of me like old man Baker did, and for me to go ahead and sell him the cotton and he would see that I did not lose anything. . He said he would see that I made money out of it; he said, 'Go ahead and sell us cotton, and I will guarantee that you make money out of it.' He said he would treat me like old man Baker did, and I relied on him. He said he had the basis on which to make the statements and he knew that cotton had to go down and I was obliged to make money out of it. I relied on his representations and acted on them . . in selling him this first hundred bales . . Mr. Marshall said he would treat me like old man Baker did, and I didn't have to deliver unless I wanted to. We sold by margins and settled for the margins — for the difference. . . He knew that the old man would let me out whenever I wanted to get out, and I would not have to fill out what I sold unless I wanted to. I always made money out of my trades with Mr. Baker. . . Mr. Marshall said, 'I will take care of you and I wont let you lose anything.' He said he would take care of me on the margins and we would settle on the differences. The margins were the difference in the selling and market price." "I had the same understanding with reference to whether there would be an actual delivery of cotton as I had with Mr. Baker."

The defendant's testimony as to the understanding between himself and Marshall was contradicted by Marshall's testimony. Marshall testified that he never knew of Mr. Baker letting the defendant out of any contract, and never promised to let the defendant out of any contract that he made. It was testified that the plaintiff "did not deal in futures."

Over the objection that a conclusion was stated by the witness, Marshall was allowed to testify that he was "the agent of the Taylor Cotton Company in Atlanta in 1916." Error was

assigned on the admission of his testimony. Another witness testified, without objection, that Marshall was "the manager of the Taylor Cotton Company in Atlanta" at the time of the signing of the contract in question.

Objection was interposed to the introduction of what purported to be a copy of a letter of the plaintiff "per J. W. Marshall," to the defendant, dated September 29, 1916, under which was written, "Accepted," followed by the defendant's name, confirming the second purchase mentioned above. This copy was introduced with depositions of J. W. Marshall, in which he stated that he had written and sent the letter and in due course of mail received back the copy, and that the signature of the defendant on it was not a copy, but "the original." It was objected to upon the ground that it was "a copy and could not be identified by J. W. Marshall in his depositions, and the defendant had not been served with notice to produce any such letter." It was further contended that this letter should not be considered, because the second transaction was eliminated from the case, the defendant conceding that "he made the last trade on his own judgment and was ready and willing to pay the balance." It was admitted that the defendant had been served with a notice to produce at a preceding term of the court and from term to term thereafter "all letters, memoranda, and correspondence with reference to the matter sued upon;" and he failed to produce the original of the letter, because he did not have it. Error was assigned on the overruling of the objections stated.

Objection to the introduction of the contract of August 7, 1916, and to Marshall's testimony in regard to it, was made on the ground that the plaintiff was a corporation and had not signed it by any officer, agent, or manager, it being signed merely: "Taylor Cotton Company, per pro J. W. Marshall." The overruling of this objection was alleged to be error.

*Alonzo Field,* for plaintiff in error.

*Frank A. Hooper & Son,* contra.