### 16035.  CLAXTON BANK *v.* SMITH.

JENKINS, P. J.  1. A person ordinarily is presumed to know the legal effect of an instrument that he has signed. Accordingly, where the maker of a collateralized note is in possession of a copy thereof, or where it fails to appear that the holder of the instrument employed deceitful or fraudulent means to prevent the maker from inspecting the original, and where no confidential relation exists between the maker and the creditor, the mere assertion by the holder of such a note, which does not contain a waiver of the thirty-days notice to sell the collateral as provided by law, that he has the right to immediately sell the property pledged, must be treated as a mere legal opinion or conclusion, and not as constituting legal fraud. *Hill* v. *Sullivan*, 63 *Ga.* 127 (2), 139; *Clarke* v. *Ingram*, 107 *Ga.* 565, 571 (33 S. E. 802); *Hart* v. *Waldo*, 117 *Ga.* 590, 591 (43 S. E. 998); *Tolbert* v. *Caledonian Ins. Co.*, 101 *Ga.* 741 (28 S. E. 991); *Whitehurst* v. *Mason*, 140 *Ga.* 148, 153 (78 S. E. 938); *Floyd* v. *Taylor Cotton Co.*, 26 *Ga. App.* 96 (105 S. E. 646), 26 C. J. 1207, 1208, 1210.

2. The portion of the evidence which was undisputed demanded a finding that the title to the collateral property passed to the plaintiff bank in part payment of the defendant's previous past-due indebtedness at the time the note sued on was given for the remainder of said indebtedness, at which time the evidences of such prior indebtedness were marked satisfied, canceled, and surrendered. Consequently the defendant was not concerned as to when the collateral was sold, and

was not entitled to the benefit of any possible enhancement in value. of the .surrendered collateral.

*Judgment reversed. Stephens and Bell, JJ., concur.*

DECIDED AUGUST 21, 1925.

Complaint; from city court of Reidsville—Judge Cowart. September 22, 1924.

STATEMENT OF FACTS BY JENKINS, P. J.

The bank sued the maker of a promissory note for $850 and interest. The defendant, by pleas as amended, set up: that the bank, when the note was given, held, under two notes and written contracts for a total indebtedness of some $28,000 principal and additional interest, 200 bales of sea-island cotton as collateral security; that on a stated day the bank demanded payment, insisting that it had the legal right to sell the cotton on that day, when the market price was 68 cents a pound, and that it would sell the cotton at that price on that day; that the statements as to the necessity and right of selling the cotton at that time, and that it would then be sold, were fraudulent, in that, under the law as to giving thirty days notice of sale, the bank had no such right; that it in fact held the cotton several weeks, and then sold it for 75 cents a pound; that the $850 note sued on was given in settlement of the old collateral notes for the difference between the indebtedness and 68 cents a pound, the then market price; that the relationship of the parties was confidential; and that by reason of such fraudulent misrepresentations, and the failure of the plaintiff to sell the cotton at the agreed time and price, and its subsequent sale at 75 cents a pound, plaintiff is not liable on the $850 note, but is entitled to the difference in the market price when actually sold by the bank, after deducting the amount of the note sued on. The plaintiff demurred both generally and specially to these allegations, as insufficient to show fraud or any legal defense, and preserved its exceptions pendente lite to the judgment overruling its demurrers. The jury found in favor of the defendant's counterclaim for $3,-582.86 principal and $1,140.30 interest, and the plaintiff bank excepts to the overruling of its motion for new trial, based on the general grounds, alleged errors in the charge, and the alleged disqualifying relationship of certain jurors to the defendant and his counsel. The evidence of the bank's witnesses was to the effect that, on the date on which the $850 note was executed, it was under-

stood and agreed that the cotton collateral was being turned over by the defendant to the bank as its absolute property, to sell and deal with as it chose, on the basis of the then market price of 68 cents a pound; that on the faith of this agreement, the bank marked paid and surrendered to the defendant all of its $28,000 of notes and evidences of indebtedness, charged them off on its ledger, and took the $850 note from the defendant without security; that it made no agreement or promise as to when it would sell the cotton; and that the proposition as to the settlement and taking over the cotton by the bank was first made by the defendant. There was no evidence tending to support the averments of fraud or confidential relationship, unless it be the testimony of the defendant and his father that the bank's officers at the time in question stated that it was necessary to sell the cotton on the date of the settlement, and that they had a legal right to sell the same, and would sell the same on that date at the then market price of 68 cents a pound. The defendant himself testified that, in closing the transaction, the bank surrendered to him the $28,000 of notes, which he later burned. While he denied the plaintiff's testimony that he had proposed to the bank the taking over of the cotton as their absolute property, and that he had so expressly agreed, he nowhere testified that there was any express agreement or understanding that he should retain any title or claim to the cotton, or that he merely gave to the bank the right of selling the collateral at that time without the legal notice required by law under the contract; and his evidence failed to negative the bank's testimony that the transaction was closed by the bank's actual taking over of the cotton as its property on a basis of 68 cents a pound, and by its cancellation and surrender of all evidences of the prior indebtedness, charging the same off on its books, and entering the cotton in regular course on its books as an asset of the bank; and failed to negative the physical testimony that the prior indebtedness was thus in fact charged off by the cancellation and surrender to the defendant of his notes. It appears that the defendant must have been in possession of copies of the collateral notes, since in a previous injunction suit brought by the defendant against the plaintiff relating to these prior contracts, a copy was attached to his petition. Nor is there any evidence going to indicate that the defendant was prevented from examining the original notes.

*R. M. Girardeau, W. T. Burkhalter, J. T. Grice,* for plaintiff.

*A. S. Way, E. C. Collins, P. M. Anderson,* for defendant.