DECIDED MARCH 3, 1933.

*Joseph B. McGinty,* for plaintiff.
*Z. B. Rogers, Clark Edwards Jr.,* for defendants.

22319. TWIN CITY FIRE INSURANCE CO. *v.* WRIGHT.

DECIDED FEBRUARY 10, 1933. REHEARING DENIED FEBRUARY 28, 1933.

*Smith, Hammond, Smith & Bloodworth, Leon Hood,* for plaintiff in error.
*Willis Smith,* contra.

MacINTYRE, J. In an action on a fire-insurance policy Mrs. Willis Wright recovered a verdict and judgment against Twin City Fire Insurance Company for $1,051.30 fire loss and $100 attorney's fees. By exceptions pendente lite the insurance company raises the question whether the trial judge erred in denying its motion for a continuance, based upon the absence of a witness. The other questions for consideration are presented by the motion for a new trial.

By paragraph the substance of the petition is as follows:

1. Defendant is a foreign corporation with an office, agent, agency, and place of business in Carroll county, Ga.

2. "On January 27 or 28, 1931, petitioner made application" to defendant "for certain fire insurance, and on said date the defendant insured" certain property of petitioner in the sum of $1500.

3. "On January 28, 1931, petitioner paid the premium due on said insurance policy, . . and by the terms of said insurance contract the property of petitioner was insured for a period of one year. . ."

4. "On March 4, 1931, all of said property was destroyed by a fire of unknown origin, without any fault of petitioner, and said defendant is therefore indebted to your petitioner . . in the sum of $1500. . ."

5. "Petitioner complied with the terms and conditions of said insurance contract. . ."

6. "Immediately after said fire, petitioner gave the defendant notice, as provided by the terms of said policy, and said defendant has been notified of said loss and damage."

7. "On April 22, 1931, petitioner filed proof of loss with said defendant, as provided by said policy, and said defendant has failed and refused to pay said insurance or to assign any reason for not doing so."

8. "More than sixty days have elapsed since the proof of loss was filed and demand made for said insurance by petitioner, . . and petitioner alleges that the refusal to pay said insurance . . is in bad faith, . . and she alleges that . . said defendant, in addition to the amount of the policy ($1500), is liable for twenty-five per cent. of said policy . . and reasonable attorney's fees" amounting to $150.

Insofar as is necessary for the determination of the questions raised by this record, the substance of the defendant's answer is as follows:

1. Admits paragraph 1 of the petition.

2. "Answering paragraphs 2 and 3 of plaintiff's petition, defendant admits that on January 27, 1931, it issued to Mrs. Willis Wright its policy No. 37, said policy being wholly in writing or print and containing the entire agreement between the parties." Said policy being in the possession, custody, or control of plaintiff, defendant can neither admit nor deny plaintiff's conclusions as to the terms and provisions thereof, and demands strict proof of the same. "Defendant admits the premium called for in said policy was paid. Except as herein otherwise answered, the allegations of said paragraphs 2 and 3 are denied."

3. "Defendant denies paragraphs 4, 5, and 8 of plaintiff's petition."

4. "Answering paragraph 6, defendant admits that it was notified of the occurrence of the alleged fire."

5. "Answering paragraph 7, . . defendant admits that it received a paper purporting to be signed and sworn to by Mrs. Willis Wright on April 22, 1931, said paper being headed, 'Sworn statement and proof of loss to the Twin City Fire Insurance Co.' Said paper was received by the defendant on April 29, 1931. Except as herein otherwise answered, the allegations of said paragraph are denied."

6. "For further plea and answer, defendant avers that the aforesaid paper purporting to be a proof of loss states, among other things, as follows:

"(4) Title and interest. The property described in this policy, and on which loss is claimed, belonged at the time of the said fire to your assured in fee simple, and no other person or persons had any interest, lien, or incumbrance thereon, except R. A. Thompson and Auto Bond and Investment Co."

"(5) Changes. Since said policy was issued there has been no assignment thereof, or change of ownership, use, occupancy, possession, location, or exposure of the real or personal property described, or of your assured's interest therein, except mortgaged to the Auto Bond and Investment Co."

7. "Defendant avers that on or about December 6, 1929, the plaintiff executed and delivered to R. A. Thompson . . a warranty loan deed in consideration of . . $425" to described land (on which the insured property was located).

8. "Contemporaneously with the execution of said deed, plaintiff executed and delivered to the said R. A. Thompson her first mortgage real-estate bond in the sum of $425, with five interest coupons attached, for $34 each, said bond or note maturing . . on Nov. 1, 1934. . ."

9. Said policy contains the New York standard mortgagee clause, with loss or damage payable to R. A. Thompson as first mortgagee.

10. "The defendant, claiming that it was not liable to the plaintiff for any loss or damage under this policy, did, on or about June 15, 1931, pay the said R. A. Thompson . . $448.70, being the full amount of principal and interest due by the plaintiff to the said Thompson under the aforesaid note and loan deed, and the said Thompson did, on said date, execute and deliver to the de-

fendant a transfer, assignment and conveyance of the said loan deed and the property described in said loan deed. . ."

11. "Defendant avers that on January 28, 1931, the plaintiff executed and delivered a warranty loan deed to the Auto Bond and Investment Company to secure a loan . . of $252.63, said conveyance and loan being expressly subject to the conveyance and loan . . of R. A. Thompson, . . and said second loan deed was a valid and outstanding instrument of record on March 4, 1931, the date of the alleged fire."

12. "The property conveyed, first, by the loan deed to R. A. Thompson, and, second, by the loan deed to Auto Bond and Investment Company, is the same property referred to and described in the policy of insurance sued on as being situated on the east side of the public road about one mile north of Mount Zion in Carroll Co., Ga."

13. The policy declared upon provides: "This entire policy, unless otherwise provided by agreement indorsed hereon or added hereto, shall be void . . if any change, other than the death of the insured, take place in the interest, title or possession of the subject of insurance, . . whether by legal process or judgment or by voluntary act of the insured, or otherwise."

14. "Defendant avers that by virtue of the execution and delivery by the plaintiff to the Auto Bond and Investment Company of the second warranty loan deed . . there took place a change in the title and interest of the subject of insurance by the voluntary act of the insured, whereby . . the policy sued on became void."

15. By reason of the foregoing facts, the defendant is not liable to the plaintiff in any sum.

16. · If the court "should hold that the plaintiff is entitled to recover of the defendant, . . then and in that event the amount of principal and interest due on said note and loan deed purchased by the defendant from R. A. Thompson should be set off against any recovery by plaintiff. Defendant denies, however," all liability.

1. It does not appear that counsel for plaintiff in error insist upon their contention that the trial judge erred in overruling their motion for a continuance based upon the absence of Mrs. E. L. Connell, "the local agent of the defendant, who countersigned and issued the policy sued upon," who "was under subpœna to attend court as a witness for the defendant." It not appearing that the

doctor's certificate of Mrs. Connell's illness was sworn to, or that depositions or interrogatories had been taken out for her, the court's ruling was not erroneous in any event. In this connection it may be observed that said certificate was as follows: "This is to certify that Mrs. E. L. Connell is confined to her bed with indigestion. This Dec. 15, 1931."

2. The policy of insurance is dated and countersigned January 27, 1931, and stipulates that the insurance runs from noon of that day to noon of January 27, 1932. Said "warranty loan deed" given by plaintiff to Auto Bond and Investment Company was dated January 28, 1931; and the note for $251.65 accompanying said deed bears the same date. The cancelled check of Auto Bond and Investment Co. for $100, payable to the order of plaintiff and indorsed by her, is also dated January 28, 1931. Said check appears to have been given to cover the net proceeds of said loan. The first loan deed, made to R. A. Thompson, was transferred and assigned to the defendant insurance company on June 15, 1931. Ralph S. Brown, secretary and treasurer of the Auto Bond and Investment Company, testified, in substance, that on January 28, 1931, Mrs. Wright executed and delivered to his company a loan deed to secure a debt evidenced by note of the same date; that Mr. and Mrs. Wright had approached him several times with a view to securing said second loan, but witness had told them that such loan could not be made unless "past-due interest, taxes, and insurance lapse" were first taken care of; that Mrs. Wright said that she did not have the money to take care of said items, and witness told her to take out insurance; that "when they came back on the 28th and closed up this loan, they showed me,—at least I was satisfied,—they had made suitable arrangements, or I would not have closed the loan;" that witness did not know exactly what assurance he received, but he "was confident they had done it;" that Mr. Wright brought the policy up "at some time" and left it with witness for safekeeping; and that after the fire witness delivered the policy to the agent for Mr. R. A. Thompson.

Mrs. Willis Wright testified in part that on the next day after she had seen Mr. Brown about procuring said second loan she went to see Mrs. Connell, and told her that the Bond and Investment Company required her to take out insurance on said property before it would make the loan—told her "we could get the money the

next day when we taken out insurance;" that "they said we would get the insurance policy when we paid for it;" that witness "told her we would pay for it when we got the money from the Auto Bond and Investment Company, and how we was getting the money;" that "we told her we were giving them a second mortgage;" that "we did not get the insurance policy that day when we went out there, nor did we pay for it;" that "we went back to Mr. Brown's office the next morning and executed the deed to the Auto Bond and Investment Company;" that "Mr. Brown advanced us some money on that day of the Auto Bond and Investment;" that "this is the check he gave me on January 28 of this year;" that witness indorsed said check and got the money on it; that "after we got the money . . my husband went back and paid her" and he brought the policy back with him. Mr. Willis Wright testified in part as follows: "I told Mrs. Connell that my wife was going to give the Auto Bond and Investment the second deed to the land to get some more money, and she already owed them about $150, and she was going to make the second deed to secure the $150 and what we was going to borrow. Mrs. Connell said she would write the policy. We did not get the policy that day. I went back the next day and got the policy and paid her for it. I got the loan on the 28th. It was on the 27th that I told Mrs. Connell that I was going to make the second deed. . . We got $100 from Mr. Brown. I then went back to Mrs. Connell and paid her for the premium. . . I got the policy when I paid her that day. It was on the 28th that I paid her. Mrs. Connell asked me did I get my money, and I told her that . . I gave the Auto Bond and Investment Company the second deed—my wife did—for security, and got the money. . . After I paid her the money at the door she went back in the house and got the policy and brought it out. . . She wrote the first policy, the one she didn't get right, and I carried it back. . . Mrs. Connell wrote me a letter and told me to bring the policy back—there was a mistake in it, so I took it back and she wrote a new policy. I went up and seen it, and told Mr. Brown that I had the policy wrote, and told him I wanted to pay the premium out of this loan. The day we closed the loan I went up and paid for the premium. The day my wife gave the second mortgage I went back down there. But the day I went down and seen Mrs. Connell and she wrote it, we had not made the

arrangements then. We had not got the money on the 27th; we got it on the 28th. It was on the 27th we got the last policy. On the 28th we went down and closed the loan. On the 27th Mr. Brown told me to come back the next morning and he would let me have the money. My wife got the money and gave it to me, and I went and paid the premium. . . I didn't have the policy until I paid for it. I did have the first one, though. The day the loan was closed I went down there and paid the premium and got the policy. . ." L. S. Lovvorn testified that Mrs. Connell did not give Mr. Willis Wright the policy of insurance until after Wright had paid her the premium on it.

There is much oral testimony and documentary evidence in the record here which we have deemed it unnecessary to set out to illustrate the issues presented. It will be observed that the principal defense is set out in paragraphs 13 and 14 of the defendant's answer. Very briefly stated, the question is this: Did the giving of the second security deed invalidate the policy? If the second security deed was executed and delivered before the insurance contract was complete and operative, and the insurer's authorized agent, Mrs. Connell, knew of this fact when said insurance contract was entered into by her principal through her as such agent, the policy of insurance would be valid. On the other hand, if the second security deed was given after the policy of insurance was in force, the insurance contract would be invalidated. See *Athens Mutual Insurance Co.* v. *Evans,* 132 *Ga.* 703 (64 S. E. 993), where the policy of insurance contained provisions very similar to those in the policy with which we are dealing. See also *Beasley* v. *Phœnix Ins. Co.,* 140 *Ga.* 126 (78 S. E. 722) ; *Atlantic Mutual Fire Insurance Co.* v. *Laney,* 38 *Ga. App.* 1 (142 S. E. 571), and cit. While the evidence in this case is not as clear as might be desired, it does appear that the jury were warranted in concluding that, with the knowledge of the insurer's authorized agent, the policy of insurance was issued and delivered, and the first premium thereon paid, at a time when said second loan deed was in full force and effect. We reach this conclusion notwithstanding the fact that the insurance policy is dated January 27, and the loan deed January 28, and notwithstanding the further fact that the plaintiff in the trial court did sign the proof of loss containing the answers as stated in paragraph 6 of defendant's plea and answer. Without setting out or discussing the

evidence bearing upon the other features of the case, we shall merely state that, in our opinion, except as to the allowance of attorney's fees, the plaintiff made out a case.

3. It appears from ground 4 of the motion for a new trial that the trial judge charged the jury in the language of the Civil Code (1910), § 2490, which reads as follows: "Every insurer has a right to prescribe regulations as to notice and preliminary proof of loss, which must be substantially complied with by the assured: Provided, the same are made known at the time of the insurance, and are not materially changed during the existence of the contract. An absolute refusal to pay waives a compliance with these preliminaries." It is insisted in this ground that the court erred in charging the jury the last sentence of the foregoing code section, because the petition alleged compliance with the terms and conditions of the contract, and did not aver waiver as to notice and proof of loss, and because a document purporting to be a sworn proof of loss was actually introduced in evidence. It is quite true, as stated by counsel in their brief, that "proof tending to show a waiver of proofs of loss will not sustain an action alleging compliance with the requirements as to proofs of loss." See *McLeod* v. *Travelers Ins. Co.*, 8 *Ga. App.* 765 (70 S. E. 157) ; *Frye* v. *Continental Life Ins. Co.*, 43 *Ga. App.* 849 (160 S. E. 544). It was held in the *McLeod* case that a nonsuit was properly granted where the petition merely alleged compliance with the requirements of the policy, and the evidence only showed a waiver of those requirements. To the same effect is the *Frye* case, and the case of *Fidelity & Casualty Co.* v. *Gate City National Bank*, 97 *Ga.* 634 (25 S. E. 392, 33 L. R. A. 821, 54 Am. St. R. 440). We see nothing in the rule invoked by counsel for plaintiff in error that militates against our conclusion that, under the peculiar facts of this case, the court's charge was not harmful to plaintiff in error. We hold that this ground is without merit.

4. Ground 5 avers that the court erred in charging the jury the law laid down in the Civil Code (1910), § 2549, which is: "The several insurance companies of this State, and foreign insurance companies doing business in this State, in all cases when a loss occurs, and they refuse to pay the same within sixty days after a demand shall have been made by the holder of the policy on which said loss occurred, shall be liable to pay the holder of said policy,

in addition to the loss, not more than twenty-five per cent. on the liability of said company for said loss; also all reasonable attorney's fees for the prosecution of the case against said company: provided, it shall be made to appear to the jury trying the same that the refusal of the company to pay said loss was in bad faith."

The foregoing statute has been strictly construed by both appellate courts of this State. In *Lester* v. *Piedmont & Arlington Life Ins. Co.,* 55 *Ga.* 476, 480, 481, Judge Bleckley, speaking for the court in reference to the foregoing code section, said: "The Code . . makes the forfeiture depend on refusal for sixty days after *demand.* The demand ought, therefore, to be averred as taking place at a time when the plaintiff had a right to exact present payment, and the declaration should show that refusal, in bad faith, was made and persisted in for sixty days. There is no *demand,* in direct terms, averred in this declaration; and the only application for payment alleged is that which took place at the time of submitting proof of death, etc., and that was before the plaintiff had a right to make absolute demand for payment; for the company, according to the terms of the policy, could defer payment for ninety days, or perhaps for eighty-nine days, after receiving the stipulated proofs." See also *Alliance Insurance Co.* v. *Williamson,* 36 *Ga. App.* 497, 504 (137 S. E. 277), and cit.

It appears from the record here that the fire occurred on March 4, 1931; that on April 22, 1931, counsel for the plaintiff mailed proofs of loss to the defendant, together with his letter containing this sentence: "I would appreciate it if you would let us have check covering this loss at once and send it in care of me, payable as provided in the policy;" that said letter and proofs of loss were acknowledged on April 25, 1931; that on May 15, 1931, the insurer denied liability on the policy of insurance; that suit was filed on June 26, 1931; and that the policy provided that loss shall not become payable until "sixty days after notice, ascertainment, estimate and satisfactory proof of the loss herein required. . ." Under the facts stated, we think that the court's charge was warranted, and hold that this ground does not disclose error. In this connection see *Atlantic Mutual Fire Ins. Co.* v. *Laney,* 38 *Ga. App.* 1, 3 (142 S. E. 571); *Central Manufacturers Mutual Ins. Co.* v. *Graham,* 24 *Ga. App.* 199 (99 S. E. 434).

5. Ground 6, complaining that the court charged the jury the

definition of executed and executory contracts in the language of the Civil Code (1910), § 4217, discloses no reversible error for the alleged reason that said law was not applicable.

6. Grounds 7 and 8 will be considered together. Ground 7 complains that the court instructed the jury as follows: "The defendant contends, among other things, that they are not liable by reason of the fire, if there was one, under the terms of the policy, for the reason that the proof of loss did not show the plaintiff's right of recovery as provided by law. Now if you should find that the plaintiff did have this insurance, the loss occurred by fire, and that she complied with all the terms of her contract, as before stated, in her insurance policy, and with the law applicable thereto given you in charge, then she would have a right to recover under the policy. As before stated, she contends that she submitted the proof of loss, or legal proof of loss, and that the defendant waived that proof of loss and the conditions thereof by refusal to pay within the time prescribed by law and under the terms of the policy. Well, if you should find . . that the contentions of the defendant are true, that she did not submit to it the proper proof of loss showing the rights of the plaintiff to recover, and the defendant did not so act as to waive the proof of loss under the law and under the policy, why, then she could not recover. . ." It is insisted that this charge is erroneous because its effect was to submit to the jury "the question of law as to whether or not proofs of loss . . were or were not sufficient on their face to sustain plaintiff's right of recovery," when this was a question for the court, and not the jury, to determine. In this connection it is contended that the proofs of loss "show a change in the interest or title of the insured since the issuance of the policy, . . reciting as it does: 'mortgaged to Auto Bond and Investment Company.'" It is also contended that the "uncontradicted testimony of plaintiff" and the documentary evidence show the same thing. It is next contended that said charge was erroneous for the reason that plaintiff pleaded, and sought to prove, compliance with the terms of the policy, and never pleaded or sought to prove any waiver of those provisions.

The proof of loss was introduced in evidence without objection, and defendant pleaded as a defense to the action the statement in said proof of loss to the effect that the property was "mortgaged to the Auto Bond and Investment Company" after the policy was is-

sued.   We do not understand that the ruling in *Cannon* v. *Phœnix Ins. Co.,* 110 *Ga.* 563 (35 S. E. 775, 78 Am. St. R. 124), that there was "no error in refusing to allow the plaintiff to introduce in evidence a proof of loss which showed on its face that the company was not liable," is controlling here.   As hereinbefore indicated, we do not think that, under the facts of this case, the court committed reversible error in submitting to the jury the question of waiver of the provisions of the policy.   We hold that this ground discloses no reversible error.

7.   Ground 8 criticises the last two sentences of the excerpt quoted above, for the same reasons set out in ground 7; and we hold that ground 8 discloses no reversible error.

8.   Ground 9 complains of this charge of the court: "If you find   .   .   that she [plaintiff] made   .   .   such a loan at the time there was a valid, subsisting insurance policy effective on the property   .   .   and did so without attaching or indorsing that fact on the policy, as provided in the policy, then she could not recover." The court charged also the converse of the foregoing proposition. We quote from the ground as follows: "Movant contends that this charge   .   .   was error because, in effect, it submitted to the jury as a question of fact the determination of the exact time of the inception of the policy of insurance sued upon, with reference to the time of the execution of the security deed to the Auto Bond and Investment Company, and the jury were   .   .   erroneously authorized to find that the inception of the policy was other than the date and time stated in said policy, thus varying the terms and provisions of the written policy as sued on.   .   .   Plaintiff's petition contains no allegations seeking to vary or waive the terms of said policy in any particular.   .   ."   Under the very unusual situation presented by the facts of this case, we do not think that the plaintiff was debarred from showing, if she could, that, although the policy was dated on January 27, 1932, it was, as a matter of fact, not a completed contract and was not in force until the following day.   We hold that this ground is not meritorious.

9.   The last ground (numbered 10) avers that the court, in effect, permitted the contract of insurance to be varied by parol evidence when he allowed the plaintiff, over proper objection, to testify when she got the policy.   The tenor of this ground is very like the previous ground, and we hold that it is not meritorious.

10.   As to the recovery of attorney's fees, see *Queen Ins. Co.* v. *Peters*, 10 *Ga. App.* 289 (73 S. E. 536).

The judgment is affirmed on condition that the plaintiff, before the remittitur from this court is made the judgment of the trial court, shall strike from the verdict and judgment the sum of $100 allowed as attorney's fees; otherwise the judgment shall stand reversed.

*Judgment affirmed on condition.   Guerry, J., concurs.   Broyles, C. J., dissents.*

BROYLES, C. J., dissenting.   The policy was dated January 27, 1931, and the premium was paid on January 28, 1931, and the policy was delivered on the last-named date.   Under the ruling in *Todd* v. *German American Ins. Co.*, 2 *Ga. App.* 789 (59 S. E. 94), and the documentary and oral evidence in the instant case, there was a completed contract of insurance entered into by the insured and the insurance company on January 27, 1931, and the fact that the premium was not paid and the policy not physically delivered until the next day is immaterial.   This is the controlling point in the case and, in my opinion, requires a reversal of the judgment.