E. W. SEABROOK, administrator, plaintiff in error, *vs.* THE UNDERWRITERS AGENCY *et al.*, defendants in error.

When a bill was filed against an insurance company, containing allegations which make a *prima facie* case of fraud and negligence on the part of the agent of the company in failing to effect an insurance on cotton, whereby, the complainant was injured and damaged, the Court of equity having *first* obtained jurisdiction of the case, will retain it until the cause can be heard and determined on its merits. In all cases of fraud (except fraud in the execution of a will) equity has concurrent jurisdiction with the Courts of law.

Insurance. Equity. Before Judge JOHNSON. Muscogee Superior Court. November Term, 1870.

This bill was by Seabrook, as administrator of Dawson against Rust, the Agent, and The Underwriters' Agency, a corporation of New York, composed of the Germania, the Hanover, the Niagara and the Republic Insurance Company, each of which is a corporation of New York, as averred, the averrments of which are fully stated in the opinion. Answers had been filed and the bill was read on trial when the Court dismissed it for want of equity.

H. L. BENNING for plaintiff in error. The motion came too late: Story's Eq. Pl., 8, secs. 461, 291, Note 1, sec. 594; 27th Ga. R., 233, 352–259. If in time it was not good: 1 Dan'l Ch. Pr., 389, 398; 8th Ga. R., 506–486. Amendment: secs. 3435, 4118 R. Code. Constructive fraud:

sec. 3116 R. Code; Old Code, sec. 2948.   Equity jurisdiction : R. Code, secs. 3115, 3041.   Court first taking jurisdiction will keep it :   Old Code, sec. 3029.   The principal is bound for carelessness, etc., of agent : R. Code, sec. 2175 ; 18th Ga. R., 432, 411 ; Dig. F. Ins. Decisions, 306, sec. 4, (20 Barb., 468 ;) 19 How. R., 318 ; 1 Pars. on Ins., 503, 37, 2 ; Ed. F. Ins. Decisions, 444, secs. 4, 5, 6, 8, 9, 10, 17, 19, 20, 22, 24, 64 ; Id., 637, secs. 3, 25, 28 ; Id., 34, secs. 7, 11, 12, 15, 20, 23, 44, 52, 62, 63, 64 ; Hildyard on Ins., 537–8, 546–7.   If principal is not bound agent is : R. Code secs. 2187, 2167, 3076.   Agreement to insure may be specifically enforced in equity :   Dig. F. Ins. Decisions, 166, sec. 1, 2, 3.   As to waiver by Insurance Agent: Carrugi's case, 40th and 41st Ga. R.

R. J. MOSES for defendants.

WARNER, Judge.

This was a bill filed by the complainant against the defendants, on the 13th of April, 1866.   The defendants had answered the bill.   When the cause was called for trial at the November Term of the Court, 1870, and after hearing the bill read, the Court dismissed the same for want of equity, to which the complainant excepted.   The facts alleged in the bill are in substance as follows :   The complainant had two lots of cotton at Albany, Georgia, one of fifty bales, the other of sixty bales, which he desired to ship to Apalachicola, and to insure the same.   On the 6th of February, 1866, Bowers, as the agent of complainant, wrote to Rust, the agent of the Underwriters Insurance Agency, at Albany, to "please find Mr. Oliver Cromwell, (who was also an agent of complainant,) and get particulars of how he ships two lots of cotton to Apalachicola, one of fifty and the other of sixty bales, and *insure* them to Apalachicola, send bills to me, and I will remit by express.   Your prompt attention will much oblige," etc.   The bill alleges that this letter was received by Rust

Seabrook *vs.* The Underwriters Agency.

on the 8th or 9th of February, that he looked up Cromwell in Albany, in order to obtain from him the particulars of how he was shipping said cotton, and read the letter to him with that view; that Cromwell then informed him that the lot of sixty bales was already on board the steamer White Rose, lying in the river at Albany, which would leave the next morning; that the lot of fifty bales would be sent by one of Rust's boxes, as there was not time to get it on board the steamer; that Rust made no further inquiry, apparently satisfied with the information he had received, retired, as the said Cromwell supposed, to make out the insurance as he was instructed to do by Bowers' letter, which he had in his hand.   On the 9th of February, 1866, Rust answered Bowers' letter, in which he stated, "Your favor of the 6th instant, is received.  Mr. Cromwell is now shipping sixty bales cotton by the steamer White Rose, now loading at this place; the other fifty bales he will not be able to get off in time for the boat, but will ship next week."  This letter was received by Bowers two or three days after its date, who considered it to mean that his request had been complied with, and that the cotton was insured, and so the complainant was informed. And all parties rested satisfied that the insurance had been effected, and that there was nothing further to be done by any of them.   Things remained thus until the 19th of February, 1866, when the steamer White Rose sunk at "Hell Gate," on her way to Apalachicola, and the cotton was damaged to the value of $9,500 00.   Two or three days afterwards, Cromwell, the agent of complainant, called on Rust to arrange with him the payment of the insurance, when, much to his surprise, Rust, after reflecting a little, said to him, that the cotton was not insured, that he had received no money to pay the insurance with, and he was not in the habit of advancing on insurance.   The complainant alleges that this was a mere pretext and after-thought, because Bowers, in his letter, had requested him to send his bills for both lots of cotton to him, and had assured him that he would remit

him payment by express, and that Rust had acted on his letter by hunting up Cromwell, reading it to him, and receiving from him the particulars of how the cotton was to be shipped, and did act on it in respect to the other lot of fifty bales, in respect to which, he did not only insure as the agent of the said Underwriters Agency, but made out all his charges, including the premium for insurance against Bowers, making no objections to the proposed terms of payment. The complainant alleges that Rust, by his conduct in the premises, induced him and his agents to believe that he had insured said cotton, and so prevented him and them from effecting an insurance thereon elsewhere, as there was ample time to have done, inasmuch as the steamer did not leave Albany for several days after he received Bowers' letter and read the same to Cromwell, and the steamer did not sink until the 19th of February. The complainant alleges, that in consideration of the promises, he reposed full confidence in Rust, as the agent of the Underwriters Agency, aforesaid, that he would insure the cotton, and that his omission or neglect to do so, was contrary to his duty, both legal and equitable, and contrary to the trust and confidence which the complainant and his agents justly reposed in him, and is a *fraud* upon him for which he is not only liable, but the Underwriters Agency, also, who are bound for the care, diligence and fidelity of their agents in their business, and responsible for his neglects and frauds, in the transaction of such business, wherefore he says that said Underwriters Agency and the said Rust, are liable to him for the loss of the cotton.

As a general rule of law, the principal is bound for the care, diligence and fidelity of his agent in his business, and for the neglect and *fraud* of his agent in the transaction of such business. In all cases of fraud, (except fraud in the execution of a will,) equity has *concurrent* jurisdiction with the Courts of law: Code, 3115. Where law and equity have *concurrent* jurisdiction, the Court first taking will retain it, unless a good reason can be given for the interference

of equity : Code, 3041. The allegations in the complainant's bill make a *prima facie* case of *fraud* or neglect on the part of the agent of the Underwriters Agency, in failing to effect an insurance on the cotton, whereby the complainant has been injured and damaged, and the Court of equity having *first* obtained jurisdiction of the case, should have retained it until the cause was heard and determined on its merits. In our judgment, the Court below erred in dismissing the complainant's bill for want of equity at the trial term thereof.

Let the judgment of the Court below be reversed.

(NOTE.—McCAY, Judge, concurred, hesitatingly, saying he thought it was best to have a hearing. R.)