## ATHENS MUTUAL INSURANCE COMPANY *v.* EVANS.

1. Where when a policy of fire insurance was issued upon a house the title thereto was in the insured, and the policy contained a condition that, unless provided otherwise by agreement indorsed thereon or added thereto, it should become void, "if any change, other than by the death of an insured," took place in the title of the subject of insurance, the subsequent conveyance by the insured of the title to another, to secure the payment of a debt due him for the construction of the house, without the consent of the insurer, indorsed on or added to the policy, was such a violation of the inhibition against a change in the title as by the terms of the policy rendered it void.

2. Where the policy also provided that "no officer, agent, or other representative of this company shall have the power to waive any provision or condition of this policy, except such as by the terms of this policy may be the subject of agreement indorsed hereon or added hereto, and as to such provisions and conditions no officer, agent, or representative shall have such power or be deemed or held to have waived such provisions or conditions, unless such waiver, if any, shall be written upon or attached hereto, nor shall any privilege or permission affecting the insurance under this policy exist or be claimed by the insured unless so written or attached," the agent representing the company when the

policy was issued had no power to bind the company by then giving a parol permission for the making of such security deed.

3. In the absence of fraud, accident, or mistake, the terms of a written contract can not be varied by parol evidence.

4. As the law of this State requires that a contract for fire insurance shall be in writing, such a contract can not be made partly in writing and partly in parol.

5. Where a policy contained the above-mentioned provisions and the property insured was a house, which the insurance company, at the time the policy was issued, knew the insured was under a moral and legal obligation to convey to another to secure the payment of a debt contracted for its construction, the issuance of the policy with such knowledge did not estop the company, when an action was brought upon the policy to recover for a loss, from insisting that the policy was rendered void when such a conveyance of the insured property was made without the consent of the insurer thereto having been obtained and expressed as the policy required.

Argued January 21,—Decided June 18, 1909.

Action upon insurance policy. Before Judge Worley. Taliaferro superior court. February 26, 1908.

Evans brought suit upon a fire-insurance policy, against the Athens Mutual Insurance Company. The substance of the petition was as follows: On December 4, 1906, one Quinn was the agent of the defendant company, and authorized in its behalf to make contracts of insurance, and to sign and issue policies of insurance for it. Upon that date he, in behalf of the company, approached the plaintiff and sought to get him "to enter into a contract of insurance against fire upon" a described house of his. Quinn was told by plaintiff "that he had just had said house built by C. H. Golucke & Son . . at a cost of some seven hundred and fifty dollars, and had not paid therefor, but still owed them, and was to pay them in monthly installments thereon, and that he had agreed with them that they should hold a deed to said premises to secure them till said debt was paid." To this "Quinn replied that that would not interfere with . . petitioner's insuring said property, and that the same would protect both petitioner and said Goluckes, and thereupon petitioner agreed that the defendant should insure said house, for said purposes and under said circumstances, with other property, for three years for a premium of fourteen dollars, the insurance on said house to be $500.00." Thereupon Quinn, for defendant, issued to petitioner the policy of insurance upon said property, a copy of which was

attached to the petition as an exhibit, and petitioner paid the premium therefor. The house had been built for petitioner by Golucke & Son under an agreement "that the price therefor should be secured to them by a deed to said premises, and said Golucke & Son had at the time of said insurance fully performed their part of said agreement, and were then entitled to have their security deed." On December 31, 1906, petitioner, in pursuance of his obligation so to do, "which had been fully made known to said Quinn in the issuance of said policy as aforesaid, . . did execute to said Golucke & Son a security deed upon said property to secure the balance of his said indebtedness, agreeing therein to keep said house insured in a sum not less than $500.00 so long as said debt remained unpaid." After the execution of this security deed, petitioner remained in possession of the premises in his own right until the destruction of the house by fire. The premises were worth much more than the amount of the debt due Golucke & Son. Petitioner had a valuable interest in the property, and the entire loss would fall upon him if the house was destroyed by fire while uninsured. Petitioner "is illiterate, unable to read, and unlearned in the law, and was unaware that his policy might be vitiated by a change in the title of the property insured, and was unaware that the policy given him was not adapted in its provisions to the protection against loss both of himself and said Golucke & Son, as promised by said Quinn, but expected and believed that" it would protect both. There was "in equity no change or incumbrance . . put upon the title to said property by the execution of said deed that was not upon it when said policy was issued, and any condition written in said policy, rendering the same void by reason of the execution of said deed, was fully waived by the defendant in issuing said policy under the circumstances stated." In October, 1907, without fault on the part of petitioner, the house was destroyed by fire, and at that time it was worth $800. Petitioner duly notified defendant of his loss, and offered to make the formal proofs thereof required by the policy; but defendant expressly waived the same, "and disclaimed any liability on the policy by reason of said deed to Golucke & Son, and for no other reason."

The policy sued on, as shown by the copy thereof attached to the petition, provided: "This entire policy, unless otherwise pro-

vided by agreement indorsed hereon or added hereto, shall be void, . . if any change, other than by the death of an insured, take place in the interest, title, or possession of the subject of insurance (except change of occupants without increase of hazard), whether by legal process or judgment, or by voluntary act of the insured, or otherwise." The concluding stipulation in the policy was as follows: "This policy is made and accepted subject to the foregoing stipulations and conditions, together with such other provisions, agreements, or conditions as may be indorsed hereon or added hereto; and no officer, agent, or other representative of this company shall have the power to waive any provision or condition of this policy, except such as by the terms of this policy may be the subject of agreement indorsed hereon or added hereto, and as to such provisions and conditions no officer, agent, or representative shall have such power or be deemed or held to have waived such provisions or conditions, unless such waiver, if any, shall be written upon or attached hereto, nor shall any privilege or permission affecting the insurance under this policy exist or be claimed by the insured unless so written or attached." The defendant demurred generally and specially. The special demurrer attacked the petition in so far as it attempted to set up a parol agreement prior to the written contract and not in accordance therewith, without alleging that anything was left out of the policy by fraud, accident, or mistake; and the allegation of a waiver, so far as the security deed was concerned, of that clause of the policy with reference to a change in the interest, title, or possession of the subject of insurance, upon the ground that the policy expressly provided against such a waiver, by the language before quoted. The demurrers were overruled, and the defendant excepted.

*T. S. Mell,* for plaintiff in error. *S. H. Sibley,* contra.

FISH, C. J. (After stating the facts.).

1. The law to be applied to the facts alleged in the petition is well settled, although its application to these facts makes this a hard case for the defendant in error. When the insurance policy was issued the legal title to the property insured was in Evans, and, according to a provision in the policy, there it had to remain during the period of time covered by the contract, in order for the policy to still continue in force, unless he died in

the meantime, or by agreement of the insurance company, indorsed on or added to the policy, a change in the title was allowed. This is clear from the stipulation in the policy, that, unless otherwise provided by agreement indorsed thereon or added thereto, it should be void, "if any change, other than by the death of an insured, take place in the interest, title, or posession of the subject of insurance (except change of occupants without increase of hazard), whether by legal process or judgment, or by voluntary act of the insured, or otherwise." After the issuance and acceptance of the policy, the title to the property insured was changed by the holder of the policy, by his conveying the same to the Goluckes, to secure an indebtedness which he owed them for its construction. Unless, therefore, the contentions of the defendant in error as to waiver or estoppel be sound, the execution and delivery of this security deed, without the consent of the insurance company indorsed on or added to the policy, violated the inhibition as to any change in the title of the property and rendered the contract of insurance void. *Phœnix Ins. Co.* v. *Asberry,* 95 *Ga.* 792 (22 S. E. 717) ; *Orient Ins. Co.* v. *Williamson,* 98 *Ga.* 464 (25 S. E. 560).

2. As the effect of the above-mentioned provision of the policy was to prohibit any change in the title of the property, without the written consent of the insurer, indorsed on or added to the policy, it would seem of itself sufficient to show that the agent of the company who acted for it when the policy was issued had no power to give a mere parol permission for a transfer of the title. But the policy, in its concluding clause, dealt directly with the question of waiver, as follows: "This policy is made and accepted subject to the foregoing stipulations and conditions, . . and no officer, agent, or other representative of this company shall have the power to waive any provision or condition of this policy, except such as by the terms of this policy may be the subject of agreement indorsed hereon or added hereto, and as to such provisions and conditions no officer, agent, or representative shall have such power or be deemed or held to have waived such provisions or conditions, unless such waiver, if any, shall be written upon or attached hereto, nor shall any privilege or permission affecting the insurance under this policy exist or be claimed by the insured unless so written or attached." It is

clear that under this provision the agent of the insurance company could not have orally waived the condition rendering the policy void, if any change should be made in the title to the property, without the consent of the company expressed as the policy required, even if he had, as is not the case here, in express terms undertaken to do so.  He had no power to talk away any provision or condition expressed in the policy.  They were all beyond the reach of any oral declaration or representation which he might make.  The rulings made in *Morris* v. *Orient Insurance Co.,* 106 *Ga.* 472 (33 S. E. 430), and *Lippman* v. *Ætna Insurance Co.,* 108 *Ga.* 391 (33 S. E. 897, 75 Am. St. R. 62), are directly in point here.  In each of those cases the policy of insurance contained the same restriction upon the power of a representative of the insurance company to waive any provision or condition of the policy as that above quoted from the policy now under consideration, and in each it was provided that, unless otherwise provided by agreement indorsed on or added to the policy, the same should be void, if the insured then had, or should thereafter procure, any other contract of insurance on the property covered in whole or in part by the policy.  It was held in both cases that a mere oral permission to the insured by the agent who issued the policy, to take out additional insurance, given at the time of issuing the policy, was not binding upon the company, and did not estop it from setting up as a defense to an action upon the policy that the insured, in violation of its terms, had taken out additional insurance.

3, 4.  Counsel for the defendant in error admits that, under these decisions, Quinn, the agent of the company, could not have orally waived a future forfeiture, but contends that the policy does not set forth the true contract between the parties, and that, without reformation, the contract ought to be enforced, not according to its plain and unambiguous terms as written, but according to the intention of the parties at the time it was made, and that their intention then was that Evans, the insured, should have the right to execute the security deed in question.  As we understand counsel, this contention is based upon the allegations of the petition as to the conversation which occurred between Evans and Quinn, the agent of the company, prior to the issuance of the policy.  There is nothing in the petition which shows that

there was any agreement by the company, or even by Quinn, its agent, that the provisions of the policy should be otherwise than as they are. It is merely alleged that Quinn was informed by Evans that he had the house built by C. H. Golucke & Son, at a cost of some $750, and still owed them therefor, and had agreed that they should hold a deed to the premises, to secure them, until this debt was paid; and that thereupon "Quinn replied that that would not interfere with [Evans's] insuring the property, and that the same would protect both [him] and said Goluckes." This falls far short of an allegation that Evans and Quinn agreed that the policy should contain a provision authorizing Evans to convey the property to Golucke & Son for the purpose here indicated. From the petition it appears that Evans merely stated certain facts to Quinn, and he simply expressed his opinion that the existence of those facts would not interfere with Evans's insuring the property; and that, if he did, the policy would protect both himself and Golucke & Son. But even if there were positive allegations in the petition that there was an oral agreement between these parties that Evans should have the right to change the status of the title of the property as he afterwards did, we have seen that the agent of the insurance company could not thus ⸱ waive the condition as to forfeiture of the policy upon a change of title, not made in conformity to the requirements of the policy. Again, it is well settled that, in the absence of fraud, accident, or mistake, none of which is alleged, all parol negotiations and agreements prior to or contemporaneous with the execution of a written contract are either merged therein or annulled thereby, and the writing alone must be considered as evidence of the contract.

There is, however, another firmly established rule the existence of which is fatal to this contention of the defendant in error; and that is, that a contract which a statute requires to be in writing can not exist partly in parol and partly in writing. The law of this State expressly requires a contract of fire insurance to be in writing, and such a contract is not valid unless it is in writing. Civil Code, §§2022, 2089; *Clark* v. *Brand,* 62 *Ga.* 23; *Thomas* v. *Funkhouser,* 91 *Ga.* 478 (18 S. E. 312); *Planters Asso.* v. *DeLoach,* 113 *Ga.* 802 (39 S. E. 466); *Delaware Ins. Co.* v. *Pennsylvania Fire Ins. Co.,* 126 *Ga.* 380 (55 S. E. 330). As said by Mr. Justice Lumpkin in the case last cited, at page

389, "under our statute it is contemplated that the whole contract of insurance shall be in writing." So, even if the agent had possessed unrestricted powers as to the making of the contract of insurance, and it had been alleged that by fraud, accident, or mistake an agreement that the insured might transfer the title of the property to Golucke & Son had been left out of the policy, the contract would have to be reformed before this agreement could become a part of the same. There is no effort whatever to reform, or to change in any particular the written contract, but the alleged right to recover is based upon the policy as it stands, and the effect of one of its stipulations as applied to the' facts is sought to be obviated by the mere oral statement of the agent of the insurer as to what the legal effect of the policy would be relatively to these facts.

5. It is further contended that the petition shows that the insurance company, through its agent who represented it in the transaction with Evans, knew that the house which was the subject-matter of insurance had been built by Golucke & Son for Evans upon credit, under an agreement which provided that he was to make them a deed to the premises to secure the debt thus created, and that the contractors had fully performed their part of this contract and Evans was indebted to them for the erection of the house; and therefore that the policy was issued by the company with full knowledge on its part that Golucke & Son were entitled to receive this security deed from Evans, and that he was both morally and legally bound to execute and deliver the same to them. Hence it is sought to bring this case within the well-settled rule, that although a policy of insurance may contain a provision which declares it to be void if a specified condition exists when it is issued, yet if the agent of the insurance company who represented it in the transaction with the insured knew, at the time the contract was entered into, that such condition did then exist, the policy will, so far as this provision is concerned, be held to be valid and enforceable. The knowledge of the agent, who acts for the insurer when the policy is issued, of existing conditions which enter into the validity of the contract is the knowledge of his principal; and if the policy is issued with knowledge of a fact or condition which by a stipulation in the contract would render it void, the insurer is held to have waived

the existence of such fact or condition in its application to the provisions of the policy. Otherwise the insurer would knowingly issue and accept pay for a policy void in its very inception, thereby practicing a fraud upon the insured. *Mechanics Ins. Co.* v. *Mutual Bldg. Asso.*, 98 *Ga.* 262 (25 S. E. 457); *Johnson* v. *Ætna Ins. Co.*, 123 *Ga.* 404 (51 S. E. 339, 107 Am. St. R. 92). In the present case, however, the policy was not, under facts known to the insurer, according to its terms, void when it was issued. On the contrary, it was then perfectly valid; for if the house had been, without fault of the insured, destroyed by fire, in the interval of time between the issuance of the policy and the making of the security deed to Golucke & Son, the company would have been liable to the insured under its contract. It was the subsequent act of the insured which invalidated the policy. It matters not that this was an act which he was morally and legally bound to perform, and that the agent of the insurer knew this when the policy was issued. The company issued the policy with a promissory warranty on the part of the insured, implied by his acceptance of the same with the condition as to subsequent change of title therein, that the title should remain as it then was, unless changed with the consent of the company expressed by indorsement upon or addition to the policy. If it be granted that the company knew, through knowledge imparted to its agent, that sooner or later Evans was bound to make the security deed to the contractors who built the house for him, he, on the other hand, knew that in order to execute this deed without thereby rendering the policy void, he must first obtain the written consent of the company, expressed in the manner pointed out by the policy. If he had applied for this consent and it had been refused, he could have surrendered the policy and collected from the company the difference between the amount of the premium which he had paid and the customary short rate for the time during which the policy remained valid. For the policy provided for its cancellation "at any time at the request of the insured; or by the company giving five days notice of such cancellation;" and that if it should be cancelled, "or become void or cease, the premium having been actually paid, the unearned portion [should] be returned on surrender of this policy or last renewal, this company retaining the customary short rate," unless it should be cancelled by the com-

pany giving notice, in which event. the company should retain only the pro rata premium.

Counsel further contends, that, "substantially and in the eye of equity, there was no change in the title" when the security deed was made; that "the deed was but an evidence of a perfect equitible right to the title that Golucke had when the policy was issued, and that was recognized and waived by Quinn in issuing the policy." It is unsound to contend that because, under the facts alleged, the Goluckes, having fully performed their part of the contract with Evans, had the right to enforce specific performance of his agreement to convey the title of the property to them as security for the debt which he owed them, there was therefore no real, substantial change in the title when this deed was made. There had to be specific performance by Evans, either voluntarily or at the behest of the law, before the title could vest in the Goluckes. It follows that the court erred in overruling the demurrer.    *Judgment reversed.    All the Justices concur.*