ORIENT INSURANCE COMPANY *v.* DUNLAP *et al.,* executors.

No. 13896. October 25, 1941. Rehearing denied November 20, December 2, 1941.

*Smith, Smith & Bloodworth, Bigham, Englar, Jones & Houston,* and *Croom Partridge,* for plaintiff in error.

*Devereaux F. McClatchey* and *Hirsch, Smith, Kilpatrick, Clay & Cody,* contra.

BELL, Justice. The record requires a decision upon two questions: (1) Does the petition allege a cause of action for the equitable relief of reformation, and (2) does it state a case for a money judgment as for money had and received? It is only because of the allegations and prayer as to reformation that this court has jurisdiction of the writ of error. An action which merely seeks a recovery as for money had and received, although similar to suit in equity, is not an equity case within the meaning of the constitutional provision relating to the jurisdiction of this court. Code, § 2-3005; *Brightwell* v. *Oglethorpe Telephone Co.,* 176 *Ga.* 65 (166 S. E. 646) ; *Jasper School District* v. *Gormley,* 184 *Ga.* 756-758 (193 S. E. 248). We will consider the two questions in the order stated.

■ The plaintiffs, as executors of Mrs. Ilah D. Little, are seeking reformation of a contract of insurance covering transportation of "miscellaneous assortment jewelry & personal effects," alleged to include a pearl necklace, from Germany to this country, the alleged ground for such relief being mutual mistake of themselves and the insurance company as to the character and value of the necklace. The petition alleged, in effect, that at the time the contract of insurance was made, the parties on both sides believed that the necklace was a genuine pearl necklace of the value of $60,000 in American money, whereas after its arrival in New York it was discovered that the pearls were Japanese or cultured pearls, "that is, of inferior quality to what is commonly known as genuine pearls, and that such pearls had a maximum valuation of approximately RM 250, or approximately $61.50." Even though the petition may be sufficient to show mutual mistake as to the matters indicated, it still does not state a cause of action for reformation. According to the allegations, the contract of insurance was intended to cover a genuine pearl necklace, and was not to insure a necklace of any other type or character. There was no agreement or intention as to insurance of a necklace made of Japanese or cultured pearls; and if the contract should now be so reformed as to cover a necklace of the latter character, it would

be converted into something which the parties never intended. While in a proper case equity may reform a written contract which, because of mutual mistake, does not express what the parties intended, it can do so only to the extent of making it speak the actual agreement, and can not make a new and different contract for the parties. An action will not lie to reform a written contract so as to add something that was not included in the actual agreement. See, in this connection, Code §§ 37-206, 37-207, 37-208; *Louisville & Nashville Railroad Co.* v. *Cox*, 133 *Ga.* 763 (2) (66 S. E. 1088); *Hammond* v. *Hinman*, 140 *Ga.* 259, 260-262 (78 S. E. 897); *Fields* v. *Continental Insurance Co.*, 170 *Ga.* 28 (3) (152 S. E. 60).

Notwithstanding the great mistake and its existence alike on both sides, as shown in the petition, it also appears that the policy was written in precise accordance with the mutual intention of the parties as to what was being insured. In other words, they intended insurance upon a genuine pearl necklace, exactly that and nothing else, so far as any necklace was concerned. For aught that appears, no one on either side ever thought of a necklace of Japanese or cultured pearls, as this one finally proved to be; and what is more, even if the facts had been known from the beginning, a policy such as that which the plaintiffs now seek to have established might never have been issued or accepted. The petition shows nothing that was either included or omitted contrary to actual intention, and thus did not state a cause of action for the relief of reformation. See *Frank* v. *Nathan*, 159 *Ga.* 202, 208 (125 S. E. 66); *Langston* v. *Langston*, 147 *Ga.* 318, 320 (93 S. E. 892); *Martin* v. *Turner*, 166 *Ga.* 293 (143 S. E. 239); *Crim* v. *Alston*, 169 *Ga.* 852, 855 (151 S. E. 807); *Steadham* v. *Cobb*, 186 *Ga.* 30 (2), 43 (196 S. E. 730); 53 C. J. 918, § 42.

The Code, § 37-210, declares that "a mistake in judgment or opinion merely as to the value of property [will not] authorize" judicial interference. The defendant, in addition to other contentions, invoked this principle. The plaintiffs insisted that the rule is inapplicable, contending that as the mistake related to the nature or character of the necklace, it was not a mistake merely as to value. In view of what has been said above, we do not deem it necessary to rule upon these contentions. Nor do we say that in case of such mistake equity might not grant some form of re-

lief, such as rescission or cancellation, where the original status may be restored.

■ The plaintiffs contend, however, that even if the policy may not be reformed, they are still entitled to a judgment for $2450 as for money had and received, having paid this sum on the premium in excess of the amount which they would have paid except for "said mutual mistake" as to the character and value of the necklace. We are also unable to sustain this contention. The question here is not what would have been the premium for insurance on a necklace consisting of Japanese or cultured pearls and being of the value of $60, as compared with the premium which was actually paid on the mutual, though mistaken, belief that the necklace was a genuine pearl necklace of the value of $60,000; but instead, it is whether the circumstances are such that the insurance company may be charged with bad conscience for its failure to pay the difference on discovering the truth as to the actual character and value of the necklace. Even where money is paid under a mistake of fact, it can not be recovered unless the circumstances are such that the person to whom it was paid can not in good conscience retain it. *Whitehurst* v. *Mason*, 140 *Ga.* 148 (3) (78 S. E. 938) ; *Stern* v. *Howell*, 33 *Ga. App.* 693 (2) (127 S. E. 775) ; *Bryant* v. *Guaranty Life Insurance Co.*, 40 *Ga. App.* 573, 579 (150 S. E. 596) ; *Dobbs* v. *Perlman*, 59 *Ga. App.* 770 (2) (2 S. E. 2d, 109).

The petition, fairly construed, shows that the insurance company acted upon information furnished to it by the plaintiffs, consisting of a protocol and inventory made by a German commissioner in Carlsbad, where Mrs. Little died in possession of the necklace. According to that instrument, the necklace was appraised for German death taxes as a genuine pearl necklace, of the value of 150,000 reichmarks, the equivalent of $60,000 in American money. The insurance as then written was intended to cover a shipment of miscellaneous jewelry and other personal effects, including the necklace as thus described; all parties to the contract then believing in good faith that such was the true character and value of this necklace. Its actual character and value were not discovered until it was safely transported to New York and there examined by one of the plaintiffs in company with other persons. It is insisted by the plaintiffs that if the necklace had

been lost in transportation and suit had been brought for the value which it was originally supposed to have, the insurer could have defended by proving the true nature and value of the article, thus showing that it was liable only for the approximate sum of $60.

This, however, does not answer the question of equity and good conscience, when the allegations of the petition are duly considered. "It is an elementary rule of construction, as applied to a pleading, that it is to be construed most strongly against the pleader; and that if an inference unfavorable to the right of a party claiming a right under such a pleading may be fairly drawn from the facts stated therein, such inference will prevail in determining the rights of the parties." *Krueger* v. *MacDougald,* 148 *Ga.* 429 (96 S. E. 867). Under this rule of construction as applied to the instant petition, if the necklace had been totally lost in transportation, the plaintiffs could have sued for the sum at which it was insured, and on the mere question of value could have made out a prima facie case for such recovery on allegation and proof of the execution of the insurance contract with its conditions and recitals as here shown, together with the circumstances of its execution, including the appraisal on which the parties apparently acted, as these facts and circumstances are alleged in the present petition. See, in this connection, *Underwriters Agency* v. *Sutherlin,* 46 *Ga.* 652; *Virginia Fire & Marine Insurance Co.* v. *Feagin,* 62 *Ga.* 515 (4); *Georgia Co-operative Fire Association* v. *Lanier,* 1 *Ga. App.* 186 (2), 188 (57 S. E. 910); and see especially as to *marine* insurance, Code, § 56-1211, comparing therewith 26 C. J. 355, § 453. It further appears from the allegations that in such case, the insurer might never have been able to disprove such prima facie case as to value. Also the plaintiffs could have filed and prosecuted such action in perfectly good faith, because, as alleged in the petition, it took arrival of the necklace in New York and inspection of it there by jewelry experts to disclose that it was not a genuine pearl necklace of the value of $60,000. The plaintiffs could always have thought that such was its true character and value, and so might the insurer. Indeed, upon this assumption, the claim might have been paid or adjusted without suit.

It is true that the plaintiffs may now be able to prove that the

necklace was actually of a different character and of negligible value, relatively speaking; but if it had been lost at sea or otherwise from a peril insured against, the truth might never have come to light, as it did on safe arrival of the property insured. As a matter of fact, when the petition is construed most strongly against the plaintiffs, as must be done, it does not appear that any evidence other than that upon which the policy was written would ever have been available to either party, unless it be the statements contained in "the subsequent protocol." But this instrument was issued more than a year after the original protocol and more than two months after arrival of the necklace in New York; and in the absence of allegation to the contrary it would seem to be a reasonable inference that it was made in response to some inquiry after arrival of the necklace in New York and discovery of the discrepancy as to its nature and value. That is to say, if the necklace had been lost in transportation, such discrepancy itself might never have been discovered and the second statement might never have been issued. Even so, the statement appears on its face to have been based, at least as to "Japanese pearls," on mere inference and hearsay; also it is contradictory, in material respects, of the original "protocol." Such being its nature, it does not point to any conclusive evidence that the true character and value of the necklace were not as stated in the original instrument in accordance with which the policy was written.

The petition shows affirmatively that whatever may have been the real extent of the risk under the law and the actual facts, the insurance company was exposed to an apparent risk comparable, at the agreed rate, with the amount of the premium paid, and might have been subjected to liability accordingly, if the article had been lost.

In the circumstances it would be inequitable for the plaintiff now to recover, as for money had and received, the greater portion of the premium paid. It is not a sufficient reply that the necklace was safely transported and actually arrived at its destination. This does not extract the exposure to liability which existed in the meantime. One may sue for pain and suffering along with other sufficient elements of damage, and have a recovery therefor after every vestige of pain has subsided. A recovery could not be defeated merely because the pain has ceased. So the equity in favor of the

insurer here is not removed merely because the article reached its destination and a loss was never sustained under the terms of the policy. The plaintiffs can not restore the original status, and do not show that the person to whom the money was paid, namely the insurer, "can not in good conscience retain it." *Whitehurst* v. *Mason,* 140 *Ga.* 148 (3) (78 S. E. 938). Moreover, the following allegations would seem to show affirmatively that the defendant could not be considered in bad conscience for refusal to refund the sum demanded: "In bringing this suit your petitioners are acting on the bona fide belief that both parties hereto were mistaken as to the existence of the genuine pearl necklace insured. If it be shown that your petitioners are now mistaken in that belief, and that there was a genuine pearl necklace in existence and insured by the defendant, then and in that event your petitioners expressly reserve the right to claim the full amount for which said necklace was insured; that is $60,000 by reason of its loss."

The court erred in overruling the general demurrer.

*Judgment reversed. All the Justices concur, except*

REID, C. J., who dissents from the rulings in the second headnote and second division of the opinion, and from the judgment of reversal.