The HOME INSURANCE COMPANY, Appellant,

v.

Thurmond TANNER, Appellee.

No. 15230.

United States Court of Appeals, Fifth Circuit.

March 11, 1955.

Rehearing Denied May 4, 1955.

Wm. B. Gunter, Gainesville, Ga., Estes Doremus, Alex W. Smith, Atlanta, Ga., E. D. Kenyon, Gainesville, Ga., Smith, Field, Doremus & Ringel, Atlanta, Ga., Kenyon, Kenyon & Gunter, Gainesville, Ga., for appellant.

Sidney O. Smith, Jr., Joe K. Telford, A. C. Wheeler, Wheeler, Robinson & Thurmond, and Telford, Wayne & Smith, Gainesville, Ga., for appellee.

Before HUTCHESON, Chief Judge, HOLMES, Circuit Judge, and DAWKINS, District Judge.

HUTCHESON, Chief Judge.

This appeal from a judgment entered in a cause tried to the court without a jury presents a single question of law. This is whether, under Georgia law, a parol agreement to make a new contract of fire insurance, by attaching to an existing policy an endorsement increasing the limits of liability, is valid so as to give rise to an actionable claim in tort or contract for the damages resulting from its breach.

The question comes here in this way. Appellee, Thurmond Tanner, filed his complaint against appellant, The Home Insurance Company, seeking in equity to reform a policy of fire insurance, No. 6171,[1] by requiring the insurance company to enter an endorsement on its policy increasing to $29,902.75 the $10,500 liability provided for therein. The complaint further sought the recovery of $19,940.75, the difference between the two sums under the policy as reformed. Before the suit, the insurance company, denying that it was liable for any more, had paid Tanner $10,500, its maximum

1. As summed up in the opinion of the district judge, the fire insurance policy in this case is what is known as a reporting form policy and covered a fluctuating inventory of used feed bags dealt in by the plaintiff, Thurmond Tanner, in the operation of his bag business. The policy required that the insured should report within thirty days after the end of each month the amount of his inventory for the preceding month. If no such report was filed, then the last reported inventory of the prior month was to be the accepted value. The policy provided that increase in the limit of liability should be added by written endorsement with premium payable for the unexpired term computed on 75 percent of the amount of increase. These monthly reports were the basis for the premium on the policy. The average of the monthly reported inventory was taken and at the end of the policy year the premium was based upon this average.

**42**

liability under the policy as written. The policy in question was issued on January 16, 1953, and provided coverage in the maximum amount of $10,500 on Tanner's feed bag inventory.

Tanner testified that on January 23, 1953, he told Marion Whaley, agent of the insurance company, to increase the limit of coverage to $25,000. Whaley testified that Tanner did not on that date or at any other time in 1953 request him to increase the limit of coverage or to endorse the policy in any way. The policy was not endorsed but remained as issued on January 16, 1953. The fire occurred on February 8, 1953, destroying an inventory of bags valued at $29,902.75.

The case was heard by the district judge without a jury and at its conclusion he filed, in the form of findings of fact and conclusions of law [2] a carefully

2. This is their substance. "Georgia law must be applied to a Georgia contract of insurance, Jacobs v. Merchants Fire Assur. Corp. [5 Cir.], 99 F.2d 655, 657, and in Georgia, by statute, a contract of fire insurance must be in writing, Ga. Code, 56–801. It must be wholly in writing and not partly in parol. Athens Mutual Ins. Co. v. Evans, 132 Ga. 703, 64 S.E. 993, and must express the essentials of the contract, .J. T. Knight & Son v. Superior Fire Ins. Co., [5 Cir.], 80 F.2d 311, indeed, the entire contract, Ga.Code, 56–811.

"The plaintiff seeks a recovery upon a contract of insurance in excess of the limit of liability as stated therein. Thus the plaintiff's right to have the contract of insurance reformed by increasing the limit of liability in the contract, must be first established in order to authorize recovery upon that basis.

"Under the law of Georgia as it now exists, a Court of equity will reform a contract for mutual mistake, or mistake on one side and fraud or inequitable conduct on the other, Prince v. Friedman, 202 Ga. 136 [42 S.E.2d 434]. Plaintiff's claim of right to reform the contract is based upon the fact that the insured, after the contract was executed, and on Jan. 23, 1953, orally advised Whaley, the agent of the defendant, that the value of the stock of bags was more than $29,000, and requested that the limit of liability in the policy be raised to $25,000 which defendant's agent agreed to do.

"The contract which plaintiff seeks to reform is the contract of Jan. 16, 1953. This contract fixed a liability limit of $10,500. This is what both plaintiff and defendant on that date intended the contract to be. Plaintiff mistakenly believed that he was only required to insure the Jewell bags when they were being processed and that Jewell's insurance policy protected Jewell thereafter. This was the mistake of plaintiff alone. This mistake was not a mistake of the defendant for the defendant did not know on Jan. 16, 1953, that plaintiff had bags in his place of business in excess of $10,500 in value and plaintiff made no request for increase of liability limit at that time, nor was the defendant guilty of any fraud or inequitable conduct at that time, or prior thereto. It was on Jan. 23, 1953, that plaintiff discovered that he was supposed to insure the J. D. Jewell, Inc. bags after they were processed, and on that date instructed defendant's agent to increase the policy limits to $25,000.00 in order to cover said bags, which he agreed to do. This probably amounted to a new agreement and it is probable that if Whaley had performed his part of the agreement a new contract of insurance would have resulted. [Corporation of] London Assurance v. Paterson, 106 Ga. 538(2) [32 S.E. 650].

"An action will not lie to reform a written contract so as to add to the writing covenants that were not included in the original agreement. L[ouisville] & N. R. Co. v. Cox, 133 Ga. 763 (2) [66 S.E. 1088]; Fields v. Continental Ins. Co., 170 Ga. 28(2) (b) [152 S.E. 60].

"This court cannot make a new contract for the parties. Prince v. Friedman, supra. It can only reform the old contract by making it carry out the true intent of the parties at the time the contract was made. Orient Ins. Co. v. Dunlap, 193 Ga. 241 (1) [17 S.E.2d 703, 138 A.L.R. 916]. Neither party intended, on Jan. 16, 1953, that the liability limit of the policy would be $25,000.

"The Court cannot grant reformation of the contract and recovery under the contract as reformed.

"However, in this case the defendant's agent has been guilty of negligence or fraud and the plaintiff has been injured thereby, and the court is unwilling to hold that the plaintiff is without remedy. Although the plaintiff is not entitled to reformation of the contract of insurance, it is the duty of the court to do complete justice and to grant to the plaintiff the relief to which he is entitled, even though

considered and thoroughly worked out, but unreported, opinion, and entered judgment for the plaintiff on the basis of an increase in the liability limit to $25,000.

Here the appellant, insisting that Tanner and the Home Insurance Company did not, indeed could not under the law of Georgia, make a valid parol contract to insure, urges upon us that the evidence demanded a verdict and judgment for the appellant.

In support of this insistence, appellant takes for its text the trial court's conclusion, "Georgia law must be applied to a Georgia contract of insurance, and in Georgia by statute a contract of fire insurance must be in writing, it must be wholly in writing and not partly in parol, and must express the essentials of the contract, indeed the entire contract".

Contending that Sections 56–801 and 56–213 [3] of the Georgia Code and the Georgia cases cited in the opinion of the trial judge, render parol contracts for fire insurance in Georgia invalid just as the Statute of Frauds and the Georgia cases construing and applying it render invalid parol contracts for the sale of land, and quoting from Neely v. Sheppard, 185 Ga. 771, 196 S.E. 452, 455, "in

relying upon this [oral] option, the plaintiff is certainly in no better position than if he were standing upon an unconditional oral agreement to sell and purchase", appellant urges upon us that in the instant case plaintiff, in relying on the oral agreement to increase insurance coverage to $25,000, is in no better position than if he were relying upon an unconditional oral contract of insurance in the amount of $25,000.

Arguing that the trial judge has attempted to make an untenable legal distinction between a contract of insurance and a contract to insure, as here, by issuing an endorsement to be attached to an existing policy, with the practical result that, while one cannot be bound by an oral contract of insurance, he would be by an oral contract to insure, having the same effect as an oral contract of insurance, he urges upon us that Georgia law does not recognize, indeed it forbids, any such distinction. Insisting that this is the crux of this case, he argues with conviction that there was no valid and binding agreement on January 23, 1953, and that such an agreement cannot give rise to an actionable breach. Citing Aronoff v. United States Fire Ins. Co., 178 Ga. 97, 172 S.E. 59, holding that an

---

this relief is not the precise relief sought in the complaint. Rule 54(c), Federal Rules of Civil Procedure [28 U.S.C.A.]

"The result of the conversations between plaintiff and Marion Whaley, the agent of the defendant, on Jan. 23, 1953, was a parol agreement to insure or issue an endorsement to be attached to an existing policy of fire insurance, the effect of which would have been to make a new contract of insurance. See Corp[oration] of London Assurance v. Paterson, supra. Such a contract is valid. Ga.Code, 20–102; 44 C.J.S. [Insurance], § 229, p. 951. The breach of this contract, whether negligent or willful, by defendant's failure to issue the endorsement and thus increase the limits of liability, gives to the plaintiff a cause of action, and whether treated as a breach of contract or a tort, the result here is the same. * * *"

3. Section 56–801 of the Georgia Code is as follows:

"Nature of contract; necessity of writing; delivery.—The contract of fire in-

surance is one whereby an individual or company, in consideration of a premium paid, shall agree to indemnify the assured against loss by fire to the property described in the policy, according to the terms and stipulations thereof. Such contract, to be binding, shall be in writing; but delivery shall not be necessary if, in other respects, the contract shall be consummated."

Section 56–213 of the Georgia Code is as follows:

"Contracts of insurance to be evidenced by policy; signatures to policy.—Contracts of insurance to be entered into by any company organized under this Chapter shall not be binding unless evidenced by a policy of insurance in writing or print or both, and the liability of said company in case of loss sustained by any policyholder shall be governed by the terms, stipulations, and conditions appearing upon the face of the policy. * * *"

agent of a company had no authority to act for it in any manner except by a writing endorsed on the policy, it presses and represses its argument that the court has raised a liability out of an invalid promise, has found the appellant guilty of actionable wrong for the breach of an agreement which is proscribed by the public policy of Georgia as stated in its code and the decisions of its courts.

Contesting the district judge's conclusion that Section 56–213 applies only to insurance companies organized in Georgia, and citing as to the contrary, Nowell v. Mayor and Council of Monroe, 177 Ga. 648, 171 S.E. 136; and Delaware Ins. Co. v. Pennsylvania Fire Ins. Co., 126 Ga. 380, 55 S.E. 330, the appellant, quoting from Newark Fire Ins. Co. v. Smith, 176 Ga. 91, at pages 95 and 96, 167 S.E. 79, at page 81, 85 A.L.R. 1330,[4] in which the court held that Georgia is unique in requiring contracts of insurance companies to be in writing, argues that if liability can arise out of an oral agreement for insurance, as claimed here, then Georgia will have in effect abandoned its unique position to join the other states.

Appellee, insisting that the trial court's opinion is unanswerable, that the authorities it cites, especially Roberts v. Germania Fire Ins. Co., 71 Ga. 478, and Seabrook v. Underwriters' Agency, 43 Ga. 583, as well as general principles of fair and right dealing, unite to support his judgment, urges upon us that we should affirm it for the reasons the trial judge gave.

In further support of this view, appellee, citing Farmers & Merchants Bank v. Winfrey, 89 Ga.App. 122, 78 S.E.2d 818, in which a suit was brought against a bank for the failure of one of its officers to procure insurance on an automobile held as security on a bank loan, argues that if such an oral agreement can be sued on against the promisor, there is no reason for the view that it is not actionable against the insurance company itself.

We do not think so. As we read and understand the Georgia decisions, we agree with appellant's view: that plaintiff stands on his claim against the insurer, for breach of an oral agreement made with its agents to procure insurance, in no better or different case than he would stand if the suit were for the breach of an oral contract to convey land; and that if we affirm the decision of the trial court we in effect declare and give an entirely new meaning to the statutes and policy of Georgia. Nor are we impressed by appellee's argument that an oral agreement by a bank, warehouseman, automobile dealer or finance company to procure insurance is the same as an agreement by an insurer or its agent to insure. We realize that the able and careful district judge has long been familiar with Georgia law and that his views should be accorded great weight, and it is with reluctance that we are unable to accept them. We are, nevertheless, constrained to hold that, in correctly stating at its outset that the law of Georgia requires a written agreement with an insurer to support a contract of insurance, the opinion carries its own death wound with respect to the subsequent holding that the oral agreement with the agent, sworn to by the claimant, gives rise to the same liability which

---

4. "In most, if not all, of the other states of the Union, oral contracts of fire insurance are valid and enforceable. Meriwether v. Metropolitan Life Ins. Co., 44 Ga.App. 596, 602, 162 S.E. 421; 32 C.J. 1113, 1115, §§ 209–210. The statement quoted from Joyce on Insurance was contained in the first edition of that work, and no Georgia case was cited in support of the text. On the other hand, every decision referred to was rendered in a jurisdiction in which oral contracts of insurance were binding. It is thus apparent that the statement by the learned author of this work proceeded from sources which could not be relied on as stating a rule of law to be applied in the State of Georgia. As was suggested in Simonton v. Liverpool, London & Globe Ins. Co., 51 Ga. 76, 80, many of the expressions in the cases and many of the cases themselves, are to be considered in view of the fact that the law in the particular jurisdictions did not require such contracts to be in writing."

would have existed if the policy limits had been raised by a written endorsement thereon. This is not at all to say that the agent, if sued on the agreement as one by the agent to procure a policy of insurance, could not be personally held. Neither is it to say that we think the law of Georgia ought to be as we now state it. It is to say, though, that, as we read it, the decision and judgment below conflicts with that law, and the judgment must, therefore, be reversed and the cause remanded with directions for further and not inconsistent proceedings.

Reversed and remanded.

DAWKINS, District Judge (dissenting).

While I recognize, of course, that we are bound by the law of Georgia in this case, I cannot agree that Georgia law requires reversal. The trial judge, who is familiar with the law of that State and whose opinion indicates thorough study of the principles involved here, held that the appellant, through its duly authorized agent acting in the scope and pursuing the duties of his agency, was guilty of a tort for which the appellee could recover; and I think his decision is sound.

Proper presentation of my views requires the statement of facts not contained in the majority opinion. The evidence discloses, and the trial court found, that appellee was engaged in the business of buying and selling used chicken feed bags, and of processing and cleaning such bags for others. *More than a year before the loss involved here,* he contacted appellant's agent for the purpose of obtaining insurance coverage on the bags in his place of business; and the agent wrote a reporting form policy providing fire coverage on the inventory, up to a limit of $8,500, dated January 16, 1952. During the ensuing year, notwithstanding the provisions of the Georgia statute, and of the policy itself requiring *written* reports and endorsements, oral reports of inventory were made; and on three occasions, pursuant to oral discussions, the policy was endorsed to change the limit of coverage. This was in accordance with the custom followed by appellant's supervised agent.

When the first policy expired at the end of a year, a new policy (the one involved here) was written—again pursuant to oral discussion—with limits of $10,500; but it is not clear whether the policy was delivered to appellee or kept by appellant's agent. In the meantime, appellee had entered into a contract to clean and process bags for J. D. Jewell, Inc. (called Jewell), and had accumulated quite a large stock of Jewell's bags. He thought at first that those bags would be covered by Jewell's insurance and did not report them under his own policy; but when Whaley (the employee of the agency who handled appellee's insurance business) called upon him on January 23, 1953, appellee asked if such bags should be reported on his form. Whaley was not certain, and conversations followed with Jewell's attorney. It developed that contractual provisions required appellee to insure the bags while in his possession; appellee told Whaley to increase the limits on the new policy to $25,000; and Whaley, who had participated in the discussions, told him the bags were covered as of that time. On February 8, 1953, a fire destroyed all bags in appellee's establishment, and it was discovered that no endorsement increasing the limits of the policy had ever been written. Appellant paid the original policy limits, but refused to meet appellee's demands for the payment of the remaining sum up to $25,000.

Appellant does not, indeed, could not under the evidence, contest these findings; yet it argues, and the majority holds, that because its duly constituted agent failed to carry out his duties, it owes appellee nothing beyond the written policy limits. With such a conclusion, so patently contrary to the right of the case, I cannot agree.

The agent here had full authority to issue the policy, and to endorse it in any way consistent with its purpose and the relationship of the parties. It has been shown that the custom during the entire

existence of the relationship had been to arrange all matters orally without reference to the formality of reducing agreements to writing. It can hardly be denied that the agent and appellee had never given serious thought to that formality; and I believe it is fair to state that appellant must have known of the manner in which the business was being handled. It is well known that few insurance companies write policies by direct negotiations, but rely upon resident agents whom they supervise through company employees.

There is nothing novel or unjust in the theory that contractual relationships can create a situation wherein one party may, because of that relationship commit a tort upon the other party. In other words an act or omission which would ordinarily be lawful or harmless may well become unlawful and give rise to damages in tort because of the peculiar relationship between the parties. Such is the situation here.

After finding that the oral contract could not be enforced because of the statute discussed in the majority opinion, the trial judge found that under Georgia law this was a proper case for holding the company liable for the negligent omission of its agent, citing Seabrook v. Underwriters' Agency, 43 Ga. 583; Roberts v. Germania Fire Ins. Co., 71 Ga. 478. To these cases, I would add Corporation of Royal Exchange Assurance of London v. Franklin, 158 Ga. 644, 124 S.E. 172, 38 A.L.R. 626, which recognizes the rule that the company is estopped to deny the authority of an agent who promises to effect the writing required by law.

I believe these cases furnish sound authority for the view that Georgia law recognizes the distinction in such cases between enforcing an oral contract of insurance and holding an insurer liable for the negligence of its agent; and it seems significant to me that appellant cites no cases wherein the distinction was presented and rejected.

It is true that this view, if maintained, would result in the same amount of liability on the part of appellant which would have existed if the written endorsement had been made. However, this result would flow from the fact that the damages are the amount appellee would have collected *had the tort not been committed*, not from the enforcement of an oral contract. The majority view overlooks the fact that the appellee had done all he could reasonably be expected to do to protect himself against loss and that his loss resulted from the negligent or willful failure of appellant's agent to take the final, formal action. It imposes upon the insurance customer in Georgia the affirmative duty to prevent or avoid the effect of negligence on the part of the company and its agents. I respectfully dissent.